Kent, Ch. J.
The demurrer to the second plea raises the question, whether the assignees under a commission of bankruptcy, sued out in England, can maintain a suit at law here in their own names. This is more a question concerning form than substance, for there can be no doubt of the right of the assignees to collect the debts due to the bankrupt, either by a suit directly in their own names, or as trustees, using the name of the bankrupt- It is a principle of general practice among nations, to admit and give effect to the title of foreign assignees. This is done on the ground, that the conveyance under the bankrupt laws ofthe country where the. owner is domiciled, is equivalent to a voluntary conveyance by the bankrupt; and that the general disposition of personal property by the owner in one country, will affect it every where, because, in respect to the owner’s control over it, personal property has no locality. Rut the mode of recovering the debts of the bankrupt, will depend upon the forms of proceeding in the country, and in the forum in which the assignee institutes bis suit. In the court of chancery in England, the assignee files his bill in his own name, and states his title under the commission. This is also said to be the practice in Scotland, because, there is nothing in the forms of the Scotch proceedings to bar the assignee from bringing a direct action against the debtors of the bankrupt. (Kaim’s Equity, *345 vol. 2. 364. Doug. 170. Chevalier v. Lynch.) At common law, however, a chose in action is not assignable. It was not, therefore, in the power of the bankrupt to as- . . . • . sign the premises stated m the declaration, so as to enable the assignee to sue upon them in his own name; yet his assignment would have transferred as valid a title'as that under the foreign commission. No instance has been shown in which the English courts of law have allowed the foreign assignee to prosecute in his own name, and, I presume, no such instance exists. The plea is, therefore, clearly bad; The suit was properly brought in the name of the English bankrupts, and there is nothing upon the record by which the court can infer, that the suit is not carried on at the instance of the assignees, and or their benefit as trustees.
The 3d and 4th pleas do not correspond with the precedent in 5 Term, 513.* In that case the plea averred, that the negotiable note of a third person had been ac-copied and received by the plaintiffs, in full satisfaction and discharge of the prior assumpsit. Here the notes are stated to have been delivered to one Francis Childs, for, and o.n behalf of the plaintiffs, and non Constat, that Childs was an agent of the plaintiffs for that purpose, or that the notes ever came to the knowledge or into possession of the plaintiffs. Childs was to them' a stranger, and they were not bound to look after him. These pleas are, therefore, bad in substance, and it would sbe unnecessary to notice the special causes of demurrer, vv^reit not that the defendant, according to his suggestion upon the argument, may apply for leave to amend them.
As to the objections, then, to the pleas in point of form, I would observe, that the averment of a settlement and discharge, prior to the suing out of the writ, was sufficient; because the time of the suing out of the writ is the com-' mencement of the suit for the purpose averred in the plea. It was considered as the commencement of the suit in *346 the case of Carpenter v. Butterfield, (July Term, 1801,) and again in Lowry v. Lawrence, (1 Caines, 69.) and this is the good sense, as well as the truth, on the subject.— The m&tters contained in these pleas, if amounting to a and discharge, or payment, might be pleaded, as well as given in evidence under the general issue.— The case of Kearslake v. Morgan, (5 Term, 513.) is decisive that they might be specially pleaded.
Thompson, J. declared himself of the same opinion.
Spencer, J. not having heard the argument, gave no opinion, (a.)
Judgment for the plaintiffs.

 Kearslake v. Morgan.