Jones, C. J.,
(after stating the facts of the case.) The first general question for the court is, whether the plaintiffs have shown any insurable interest in freight to which the policy can attach. They were not the owners of the schooner, but the charterers of her. She was let to them by the agent of the owners, for the voyage on which she sailed, for the specific sum of $362 1-2 per month, for the entire use of her, payable on her return from the voyage to the port of New-York.
It is settled by the Supreme Court, in the case of Cheriot v. Barker and Reilley v. Delafield, and in the late case of Robins v. The New-York Insurance Company, in this court,* that the char *463 terer of a vessel, who is to pay the charter-money for the use of her at the end of the voyage, cannot insure the freight of her eo nomine. The principle which governs those cases, appears to me to apply to this. The charterer has no interest at risk, which he is to protect by insurance ; his liability to pay the charter-money depends upon the safe arrival of the ship, and the performance of the voyage. If she is lost, or fails to perform the charter, his obligation to pay the charter-money ceases. What interest, then, can he have in her carrying a freight, which, if lost, he is discharged from his liability to pay 1 It is the ship-owner, whose title to the freight he reserves by the charter-party, depends upon the performance of the voyage, that runs the risk, and is to suffer by the loss of the voyage, and to him belongs the corresponding-right to insure.
But the counsel contends, that this case is an exception to the rule, and we will briefly examine the grounds he takes to distinguish it in principle from those we have cited.
First, it is urged, that the insurers being fully informed of the nature of the intended voyage, the plaintiffs, as owners of the vessel, pro hac vice, had an insurable interest in the freight of their own goods, and of other goods carried on freight, to the extent of the difference between the valuation of the freight in the policy, and the sum they were to pay for the charter of the vessel, after deducting from such difference the freight-money earned and paid to them.
This proposition, as stated, is somewhat complicated. It involves the consideration of the bearings of the verbal communications and agreements offered in evidence at the trial upon the contract of insurance, and the legal effect of the valuation of the freight upon the rights and obligations of the parties. Upon the first branch of the proposition, the plaintiff is met at the threshold with a difficulty which seems to us insuperable. He seeks, in direct contravention of a settled rule of construction, to introduce parol evidence to vary the written contract, and essentially to alter the sense and meaning of the agreement it purports to express. . The terms of the contract are clear, explicit, and perfectly intelligible. It is a policy of insurance on the *464 freight of goods and merchandise on board the schooner Eli- terprise, for the voyage described in the policy, and the freight insured is valued ai $2,500, the sum insured upon it. Now could language be more explicit or free from ambiguity or doubt 1 What room is there for explanation by parol, unless it was admissible to show that the actual contract of the parties' was different from the agreement they have expressed and reduced to writing. But the rules of law admit of no such explanation by parol; we must adhere to the agreement as we find it in the written contract, and content ourselves with giving it its true construction.
In the case of Mumford v. Hallet the insurance was upon profits; the broker made use of a blank form of a policy on goods, and the valuation intended to apply to profits, the previously declared subject matter of insurance, was inadvertently inserted in the blank left in the policy for the valuation of the goods, but without mentioning profits as the subject to which the valuation was intended to be applied, whereby the valuation was mistakenly made to refer to goods and not to profits. The intention was obvious, and the mistake plain and palpable. Yet the court held the parol evidence of the broker inadmissible to explain it, or tq rectify the errprs, because the legal effect would be to vary the written agreement and alter the sense and operation of one of its prominent stipulations, and the insurance was in that case rescued from destruction at law, by the application (though I believe for the first time) of the principle that a policy on profits is necessarily and in its own nature a valued policy, and the profits in the absence of any express valuation by the parties, must be understood and taken as valued at the sum insured.
In the case now before us, the pretensions for a recourse to parol explanation are much weaker, than they were in that just cited. In that case, the subject matter of the insurance, appeared on the face of the policy to be profits, and the obvious intention of the parties to refer the valuation to that subject was relied on. It was urged with great force, that the valuation if referred to the goods out of which the profits were to grow, would be nugatory, and without any appropriate relation to the principal contract, but that if applied to profits, the subject matter *465 of the insurance, it would be an apt, usual and operative provisi on; indeed, that necessity required such constructive application, to give effect to the contract. But it was answered that the valuation, applied to the goods had a meaning, and the parties might intend to value the goods, and to leave the policy upon the profits open, and that the difficulty of proof of interest under such a policy in case of loss, however embarrassing to the assured, could not justify the court in breaking over an established rule of evidence for their relief.
In this case the insurance is upon freight, and the valuation is of the freight insured. There is no feature upon the face of this policy, indicating any mistake or misapplication of the terms employed, and no incongruity between the subject of insurance and the valuation in the policy, or other internal evidence of mistake or error. The proof offered is altogether extrinsic, and its object is to shew, that other and further interests, not embraced in the policy according to the ordinary construction of its terms, were intended, and verbally agreed, at the time of the contract, to be included within it and covered by its protection. Such testimony must surely be excluded by the rule which forbids the reception of parol evidence to vary or enlarge the terms of a written agreement. A closer view of the proof offered by the plaintiffs will exhibit the objection to it in a yet stronger light: the offer was to shew, that the defendants were acquainted with the nature of the voyage, and knew that the plaintiffs intended to vest the proceeds of their outward cargo in a return cargo, to be brought home in the schooner, and with such knowledge, consented and agreed, that the profits of the returns, which they refused to insure separately, and as profits, eo nomine, might be included in the freight policy, and covered by a valuation of the freight. The agreement then was that the profits should be covered by the policy on freight, and that the freight should, for that purpose, be insured at a valuation sufficient to cover both interests; and if that was the sole object of the parties, this policy was sufficient; for the valuation agreed upon, covers all the claims of the plaintiffs, and if they had an insurable interest in freight, which could impart vitality to the policy, they would be entitled to the whole *466 valuation as the measure of their loss, accounting to the insurers for what was earned and saved.
But the parol agreement to be of any avail to the plaintiffs must go further, it must be shown that the defendants were fully ° ’ • i i informed of the relation in which the plaintiffs stood to the vessel, an(] pnew them to be insured as charterers only and not the owners .of her : and with that knowledge entered into a special agreement to insure for them as owners pro hac vice, the earnings of the vessel for the voyage, as, and in the name of freight, and to value the same at a sum sufficient to cover both the earnings and freight, and the profits of the return cargo; and that for those purposes a policy on freight in the common form should be made use of without reducing the special agreement into the form of a special contract. Would evidence of such an agreement be compatible with the policy before the court Í Would it not establish an entirely new contract, and wholly supersede the subsisting policy 1 The parol proof disclosed in the case does not support such an agreement. It shows that the defendants, were acquainted with the nature of the voyage, and the intention of the plaintiffs to invest the proceeds of the outward cargo in returns, and agreed to insure the profits of those returns by comprehending them in the valuation of the freight: but it does not show that they were apprised or knew that the plaintiffs were the charterers only, and not the owners of the vessel, or that they entered into any special contract to insure for them, as charterers, the freight of goods to be shipped by themselves, or to be taken by them on freight, for others, to be carried in her. What the effect of such a special contract, with such knowledge of the title and ownership of the plaintiffs, upon the rights of the parties, might be, if properly brought before the court, I do not stop to enquire; but a general insurance on freight by the charterer, without a disclosure by him of his title, or any special agreement for the insurance, we have already seen would be inoperative and void, for want of insurable interest; and all agreements are engrafted upon it, not giving it a new insurable interest, must be equally inoperative ; and if any special agreement, is relied on to give it *467 operation, it must appear in the policy, and cannot be supplied and superadded by parol.
But the plaintiffs insist that they had an insurable interest as owners pro hac vice in the excess or surplus of the freight and earnings of the schooner on the voyage, over and above the price or amount payable by the charter-party. This surplus freight, thus supposed to constitute an insurable interest, must intend the freight and earnings of the vessel for the transportation and carriage of the goods of strangers under contracts with the charterers as owners of tier; for the charterers can found no claim upon the insurers for any loss of benefit to themselves for tire use or employment of the vessel in the transportation of their own goods, however great or valuable that benefit might be. The whole tonnage find use of the vessel is purchased by the charterer for the voyage, to be paid for, upon the contingency of the performance of the voyage. If the voyage is lost, the purchase money never becomes payable, and in case of its accomplishment, the benefits of the charter, if favourable, are realized in the profits of the adventure. But the chartered vessel may be underlet,- or employed as a general ship for the carriage of goods, under bills of lading, for specified freights payable to the master as agent of the charterer. In that case, the loss of the voyage would produce no loss to him unless the freights payable by others to him, on the safe arrival and delivery of the goods, exceeds the amount of the charter-money, which on such safe arrival, would become due from him to the owner for the charter. But it may so happen that the freights payable by the shippers to the charterer, or his agent, as owner pro hac vice, may exceed the charter-money payable by him to the general owner for the use of the ship for the voyage.
What would be the rule in the case of a surplus, whether such excess would be held an insurable interest in the charterer, or not, and whether if insurable, it would be covered by a general policy on freight eo nomine, or would require a disclosure and specification of the nature of the interest; and whether such disclosure and specification would be requisite to a binding valuation of the interest, are questions which we deem it unnecessaryin this case to agitate, for here was no surplus. The plaintiffs underlet the whole *468 deck and tonnage of the schooner (with the exception of the cabin and space under deck for 50 barrels, reserved for their own use) to J. Ballestier & Co. by charter-party for the voyage to St. Croix, for the gross sum of $450, and the port charges. The goods shipped by the plaintiffs of course occupied the reserved room of 50 barrels, or part of it, but did not exceed $2000 in value, and allowing the ffreight at one-third of the charter to Ballestier & Co., the entire freight of the two would amount to $600. The freight of the shipment of Wm. M. Peck & Co., of the small invoice of goods consigned to Nesmith, which must also have been stowed in the cabin, or the reserved space of 50 barrels, could not have materially varied the result, and the whole aggregate amount of freight and earnings of the vessel for the voyage to the plaintiff, would be highly estima! ed at $700, and the amount of the charter-money payable by them for two months only, (and 3 1-2 is shown by the plaintiffs to be the usual length of such a voyage,) would amount to $¡726.
But the plaintiffs insist on the valuation in the policy as the measure of the freight the vessel would have earned for them upon the voyage, and claim the excess of that sum, beyond the amount of the charter for three and a half months, the usual length of the voyage insured, as the surplus interest covered by their policy; which, after crediting and deducting the freight of Ballestier & Co., which was earned and paid to him, they are entitled to recover. But this claim is clearly untenable. The valuation is of the whole freight of the vessel for the voyage, and the plaintiffs to avail themselves of it, to its whole extent, must show an insurable interest in the entire of the freight. It refers to the insurable interest of the assured, which the policy is intended to cover, and is never understood or intended as the true and actual value of the interest, which would be recoverable on an open policy, but as a sum agreed upon for the measure of the indemnity in the event of a loss. How then can it be assumed, as the evidence of a surplus interest in the charterers beyond what was payable by them under the charter-party 1 They must first prove the fact of such surplus interest to have existed before they show any insurable interest to whicli that valuation could apply to the insur *469 ers as owners pro hoc vice. The most cursory view of this policy must satisfy any observer, that it had no reference to any interest in the assured, as chart erers, covering the surplus of the freights reserved to themselves over the freight payable by them ° . . to the owner for the voyage. It is in terms a general insurance on the freight of the vessel for the voyage, and it may be questionable whether, standing unexplained as it does, it is not to be restricted to the freight she was to earn for her owners; but if it admits of an application to the freight and earnings which the assured, as charterers, had at risk, it was incumbent on them to show that they actually had freight, reserved to themselves at risk, beyond the amount of their contingent liability on the charter-party to establish an insurable interest in themselves, to which the policy could attach, and on which the valuation could be en-grafted. They have shown no such surplus freight reserved to themselves, and of course have shown no right to recover on that ground.
But it is said that the plaintiffs had an insurable interest on the shipment of Peck Co., because it was a general shipment by bill of lading and the freight payable to the plaintiffs as owners, and that the valuation may be applied to that interest. The nature and precise amount of the freight payable in respect of this shipment, the circumstances attending it, and its final destiny, are not disclosed, or but obscurely stated; but they are of minor-importance, for the freight of that shipment, whatever its form may be, must equally with the freight of the plaintiffs’ own goods come within the rule we consider applicable to the case, and the charterers can have no insurable interest under this policy in the freight of any goods shipped in this vessel for the voyage in question, unless the aggregate amount of their freight exceed the charter-money; in which case, and then only, the question of the right of the plaintiffs to recover upon a contract in the general form of this policy would arise.
But suppose it were otherwise, and this freight should be held recoverable as the fruit of a general shipment by bill of lading with the plaintiffs as owners for the voyage, it would still be a mere isolated item of interest, the loss of which, if shown, might *470 give the assured a claim to the extent of their interest, but to which it would be most extravagant and preposterous to apply a valuation so vastly disproportionate, and so manifestly intended to be applied to the whole freight of the vessel for the voyage.
But we are relieved from this embarrassment in the present case, by the consideration, that this item of freight, whether the shipment was in reality on the’account and risk of Peck &Co. as general shippers, or partook of the benefit of the plaintiffs’ charter-party, and was made under some arrangement with them for joint account, formed part of an aggregate amount of freight and earnings which fell short of the sum payable by the plaintiffs for the charter of the vessel for the voyage : and in the freight and earnings of which vessel for that voyage, to the extent of the charter-money, they could have no insurable interest, because if the voyage should be successful, and the freight be earned, it must be paid over in satisfaction of the charter, and if lost, as freight would be payable by them, and consequently be lost to them, the loss of the vessel freed the charterer from all payment of compensation for the use of her to the owner, as the loss of the voyage excused him from the delivery of the goods of Peck & Co. at the foreign port. He has in truth lost nothing, for if he had earned Peck’s freight, it would have been exhausted by his payments to the owners.
Another claim is made for $101,35, for the expenses of the vessel at St. Croix. But the plaintiffs covenanted to pay all pilot-age, port charges, custom-house dues, and fees of every kind, both at St. Croix and Tobasco; and Ballestier & Co. agreed with them to pay all port charges at St. Croix. These expenses were not advanced to the master, but were paid by him out of the freight of Ballestier, which was earned by the schooner. They constitute no claims against the insurers; the plaintiffs, therefore, had no insurable interest in the freight of this vessel, and have sustained no loss for which they are entitled to recover. It follows that they are entitled to recover back the premium, and for that they must have judgment.
*471 Hoffman J.
This is an action brought by the charterers of • a, vessel, to recover of the underwriters, the amount of an msurance upon the freight of goods laden on board the Schooner Enterprise, on a voyage from New-York to St. Croix, from thence to Tobasco, and from Tobasco back to New-York : the amount of the charter being payable on the arrival of the vessel at the last mentined port.
It is settled by authorities which are perfectly conclusive, that a charterer cannot ensure the amount of his charter money, under the general name of freight; and nothing is perceived to distinguish this case in principle from those long since decided. The principle is obvious: the charterer has no interest in the subject matter of the insurance. If the vessel be lost, he has no freight to pay, and of course cannot have any thing at risk. It is the privilege of the owner to insure the freight, for in case of loss, the injury falls upon him.
If the plaintiffs had any particular object in view other than that disclosed by the policy; if they had wished to cover any actual interest of their own which they were about to put at hazard, or if they had advanced the amount of the freight-money, they might easily have been protected, by using appropriate words in the policy, to express their meaning. But judging the contract by the words used by the parties, there is no difference in point of principle between this case and that of Cheriot v. Barker. [2 John. Rep. 346.]
The plaintiffs offered to show, by parol proof, that it was their intention to insure the profits on their charter-party, under the general name of freight. The policy itself is simply on freight; and if the Court were disposed, in a plain and intelligible contract, to look beyond the obvious import of the words, to discover the meaning of the parties, the case of Cheriot v. Barker is a conclusive authority against the introduction of the parol proof. The policy itself speaks in unambiguous terms, and needs no extraneous aid to give it meaning. If the defendants had actual knowledge as to all the objects of the voyage, that can in no way vary the agreement between the parties, which is to be determined by the policy itself.
*472 The plaintiffs, however, contend that there was an excess of freight in their favour; that is, that they, having underlet the vessel to Ballestier & Co. for a voyage to St. Croix, were to re- . ceive from them for the use of the vessel, a sum greater than that which they were to pay to the owner. It is unnecessary to inquire what the rule would be in a case of surplus interest, since there is no proof, in the present case, of the existence of such an interest. The freight to be received by the plaintiffs from Ballestier & Co. and from Peck & Co., does not amount to the sum which the plaintiffs were to pay for the use of the vessel under the charter-party.
But it is supposed that the sum insured amounts to a valuation of the interest of the charterers, and that the defendants are concluded, by their own agreement, from contesting this point. The sum insured cannot be assumed as a valuation of the freight, nor adopted as conclusive evidence of the amount of the charterer’s interest. The true rule by which that interest is to be ascertained, is the actual freight which the vessel did or could earn. Now it is not pretended that this vessel did earn, or could have earned, freight to the amount of $2,500. If the parties, having full knowledge of the subject to be insured, establish a valuation upon it by express agreement, that valuation will not be set aside merely because it was fixed at a high rate. There must, however, be some proof of the intention of the parties, thus to fix a valuation which cannot be disturbed ; and in this case there is no evidence of such intention, unless the sum insured be taken as such evidence. But the amount of the insurance, as was before remarked, cannot be assumed as evidence of the intent to fix a valuation, and much less is it to be considered as conclusive upon this point.
As the sum insured cannot aid the charterers in fixing a valuation upon their interest in the subject of the insurance, the question as to the freight of the goods of Peck & Co., and the plaintiffs’ own goods, is disposed of. As to the breaking of bulk at St. Croix, the testimony upon that point is not sufficient to establish the fact, and all considerations arising from that source may be laid aside.
*473 As the freight-money to be received by the plaintiffs is not equal in amount to that which they were bound to pay, they had no actual interest in the subject matter of the insurance; for they were discharged by the shipwreck from the obligations of their own’contract under the charter-party If the vessel had gone safe, the plaintiffs would have received a small sum from Peck Co.; but in that case, they would have been compelled to pay, not only that, but a much larger amount, to the owners of the vessel. They have been gainers, therefore, by the shipwreck, rather than losers, and can have no cause of complaint from any supposed hardship of the case. The expenses for which a claim was made, were paid by Ballestier & Co., and of course are not to be refunded to the plaintiffs by the* insurers. No interest, therefore, attached in this case; the plaintiffs had nothing at hazard; the defendants have borne no risk, and the premium must, of course, be returned to the plaintiffs.

Judgment in favour of the plaintiffs for the amount of the premium.

[D. D. Field, Att'y for the plffs. E. Anthon, Att’y for the defts.]

 Ante, page 335.