Hoffman, J.
If the contract can at all be regarded as a Chinese contract, we are without information as to the law which would govern it in China, and must . therefore interpret and decide upon it according to our own.
The case is presented of an insurance upon freight of a vessel, to the amount, as insisted, of an absolute valuation of $15,000, when by no possibility could more than $5,206.25 have been at risk, and when in fact but $1,800 was actually at risk when the peril occurred, and the loss resulted.
The question would be a serious one, whether the principle of a wager policy would not here apply. It could scarcely be contended that a very inconsiderable interest would sustain a very heavy amount of insurance. The observations of that eminent commercial lawyer, Mr. Justice Josiah Ogden Hoffman, in the ease of Mellen v. The National Insurance Company, (1 Hall, 452, 472,) are very forcible. “ The sum insured' cannot be assumed as a valuation of the freight nor adopted as conclusive evidence of the charter interest. The true- rule by which that interest is to be ascertained is the actual freight which the vessel did or could earn. If parties, having a full knowledge of the subject to be insured, establish a valuation upon it by express agreement,, that valuation will not be *547 set aside merely because it was fixed at a high rate. There must, however, be some proof of the intention of the parties thus to fix a valuation which cannot be disturbed. The amount of the insurance cannot be assumed as evidence of the intent to fix a valuation, much less is it to be considered as conclusive upon this point.”
Whenever the proposition is admitted, that the nature and extent of the interest of the insured is open to inquiry, although a specific sum is mentioned in the policy as the sum insured, and thus apparently as the agreed valuation of the interest, then the question will be open, whether the contract does not partake of the nature of a wager.
But I do not consider that this question necessarily arises in this case, although made so prominent a point by the learned counsel. It seems to me that the authorities .referred to establish conclusively the following propositions, and are fatal to the plaintiff’s demand.
A charterer of a vessel cannot insure freight eo nomine, because, presumptively, as he is exempted from payment of freight by the peril insured against occurring, he has not an insurable interest in the subject insured. In such cases, he would gain by the loss of the vessel. The insurer has a right to suppose, that the applicant for an insurance on freight, is the owner of the vessel, and to expect more strict vigilance, therefore, in the guarding of the vessel, than from a mere hirer.
But he may have au interest in the fruits of a voyage aud employment of the ship, when the amount of a sub-charter, or the freight to be paid by freighters to him, exceeds the charter money which he is bound to pay. If he disclose his position as charterer, and openly effect an insurance of such an interest, it will be valid; and then a valuation policy may be free from objection.
And it need not be positively denied, that even under this policy, such an excess could be recovered, if it existed. But the charter money was $2,125 a month. The actual freight on the voyage, during which the vessel was lost, was $1,800. The time for a voyage from Bombay to *548 Whampoa, is not stated. Chief Justice Jones and Justice Hoffman concurred, in Mellen v. The National Insurance Company, (1 Hall, 452,) in requiring that the plaintiff must make out the fact of a surplus freight coming to himself. (Cheriot v. Barker, 2 John. R., 348 ; Riley v. Delafield, 7 John. R., 522 ; Robbins v. The New York Insurance Company, 1 Hall’s S. C. R., 325 ; Mellen v. The National Insurance Company, Id., 452.)
The verdict must be set aside, and judgment ordered for the defendant; the premium to be returned as claimed and admitted by the answer.
Robertson, J.
Much difficulty is created in the construction of the policy in question, by the confused designation in it, of the subject insured and valued. Such confusion has arisen from an attempt to adapt a printed form of a cargo policy, by written explanations in it, to covering a special interest in freight; a practice which seems to prevail on both sides of the Atlantic without any object, (Gordon v. The Am. Insurance Company, 4 Den., 362,) and always endangers the claim of the assured for indemnity. (Ogden v. The New York Mutual Insurance, Company, 4 Bosw., 453 ; Mumford v. Hallett, 1 J. R., 433.)
The printed part of the policy in this case professes to insure goods to be laden on board of a certain vessel, and states in print that they are valued at, “ 15,000 D’s,” inserted in writing; after which follow in writing the words, “ and declared to be on freight.” It is not brought, by evidence outside of the instrument, within the cases in which extrinsic evidence may be admitted to interpret it. We are consequently obliged to construe it according to the ordinary meaning of the terms employed ; any previous intention of the parties being wholly inadmissible, (Mumford v. Hallett, [ubi sup.,] Riley v. Delafield, 7 J. R., 522,) “ it being,” as was said in one of the cases first cited, “ a maxim that the Court can only look at what the parties have done, and not what they intended to do,” and “it is the parties’ own fault if they do not use a proper *549 policy or make the necessary corrections in a printed form.” In the present case, however, the description of the subject of insurance would become nearly if not quite unintelligible, if the mitten words were read consecutively with those printed as part of the same sentence. To render it intelligible, therefore, the same rule should be adopted as Avas adopted in Mumford v. Hallett, (ubi sup.) by making the Avritten designation of the subject of insurance, control the printed description of it, in whatever part of the policy the former may be found. The policy in question Avould then become one “ on freight.” The same result would follow if the preposition, “on,” were omitted. Indeed, the parties seem to have conceded such to be the legal effect of the instrument; for although the complaint alleges that the policy was an insurance on goods valued at a certain sum, it also alleges that it declared itself to be on freight, and avers that certain freight was earned, which was that so valued. The ansAver admits that the policy either purported or Avas intended to be on freight valued at the sum mentioned in the complaint. This would amount to an admission, either that the policy on its face professed to be an insurance on freight, or that the parties meant to have entered into such a contract, entitling the plaintiff to a rectification of the error. I, hoAvever, am unable to see how the employment of both the terms “ goods ” and “freight” to designate the subject matter of insurance, can alter the meaning of the latter, which is declared in writing to be that which was insured, nor how any of the character of cargo can thereby be communicated to the freight: the subject insured must be one or the other. Although not exactly appreciating the argument founded on the view that the plaintiff had an insurable interest in goods, it seems to me better to strip the case in advance of everything not belonging to the two questions at issue.
The valuation in the policy must, therefore, necessarily apply to the freight, Avhich is the subject insured, because expressly declared in the policy to apply to such subject. The question then is thus fairly raised, Avhether any actu *550 ally existing interest of the assured in the earnings of the vessel could be insured by the name of freight. ■
The only interest which the plaintiffs had in what the vessel earned for its owners, technically denominated freight, consisted of their liability to pay the monthly stipend at the end of the time fixed for its payment, and the port and other charges mentioned in the charter party, and to make the advances on the voyage to the captain and otherwise as therein specified: they had besides an interest to earn freightage for themselves for the carriage of goods in the chartered vessel. It may be well, however, in reference to certain aspects of the case to be presently considered, to ascertain in advance, how far the plaintiffs’ interests in the earnings of the owners was put in peril by the voyage insured. By the terms of the charter party, the owners were to “keep the vessel in good repair and manned with an efficient crew;” this of itself would irresistibly imply that the vessel should be in existence to entitle the owners to any charter money, and, of course, if it were destroyed before the end of any month, the stipend for that month, which was an entirety, should be lost. As a general rule, advances on account of freight may be reclaimed. (Phelps v. Williamson, 5 Sandf., 578.)
It might be claimed in this case, however, that as the charter was for the month and not for any voyage, the owners had a right to the charter money for any one or more entire months during which the vessel was at sea unharmed, and that such payments would be a loss to the charterers if the voyage should be ultimately broken up. But there is no evidence in the case as to the time of the commencement of either voyage mentioned in the policy, or its duration, or even the usual duration of such a voyage. It is impossible to determine, therefore, from the evidence, whether the assured had any monthly payments at stake. It would, however, in any event, take seven of such payments to make up the valuation in the policy, and being fixed amounts which could not be exceeded would either make the policy a wager or reduce the amount of the *551 valuation to that at stake; neither had the assured any interest by assignment, mortgage, common law or maritime lien in the earnings of the vessel for the owners, or any other right except that of offset or recoupment, to reimburse any advances by them; so that it may be assumed for the purposes of this case, that the assured had not at risk any interest in the earnings of the vessel for its owners on this voyage. The plaintiffs perhaps feeling the pressure of this position, contend that they had an insurable interest under the name of freight, in the freightage they might earn for the carriage of goods by them; and that as charterers of the whole vessel, they are entitled to insure such interest by the name of freight, and that the policy contains such an admission of interest as renders its specifications in the instrument, or proof of its disclosure unnecessary.
The plaintiffs, however, insist that the policy is binding, even without proof of any interest on their part, because made in China, and that there is no evidence that, by the laws of that country, a wager policy is void. There is no evidence, in fact, in the case that such country has any laws or government, nor is the ■Court bound to take judicial notice of them; at all events, what they have decreed respecting wager policies is unknown; they are not void at common law, and required a positive prohibition to make them so. The Court can take no notice of foreign laws not proved. (Monroe v. Douglas, 1 Seld., 447.) But this policy was apparently between American citizens, the defendants are a New York corporation, the vessel was an American vessel, and, more than all, the policy is said, in the “In Testimonium" clause to be executed in New York, although declared not to be binding until countersigned by the agent of the defendants, which was done at Canton. The countersigning is no more than an authentication of its issuing and delivery: the president or secretary being the proper officers to execute the contract. This, therefore, must be looked upon as a contract made in the State of New York, and governable by its laws.
*552 The principal question in the cause therefore remains to be solved; which is whether money- payable or paid under a charter party, or the loss of expected profits in the employment of the vessel, is embraced by the term “ freight ” in this policy. The original and exclusive legal meaning of that term is, compensation to the owners of a vessel, for its use in the transportation of merchandise; as rent is the like for the use of land paid to its owners. The sale by the owner of a vessel, of his interest in her, after he had executed a charter party, the right to moneys arising from which he reserved in such sale, was held to take away from such moneys the character of freight, so that they were not insurable by that name. (Riley v. Delafield, 7 J. R., 522.) In the opinion delivered in the case alluded to the only interest of the plaintiff was said to be that founded on the special agreement; “ It could not strictly or technically be denominated freight, since it teas not an interest accruing to the plaintiff as owner of the vessel for the use of her," which was the ground upon which the decision was placed. The reason given why the meaning of the word should not be enlarged, was put in plain and forcible terms, and is unanswerable or at least has remained unanswered to this day. It was that it amounted to a representation, if not a warranty, that the insurer was owner, and such a representation was material, because the owner “had a stronger interest in the equipment and management, than a stranger having no such stake in the voyage,” It was held that any laxity of construction would lead to double insurances, and fraudulent combinations to destroy the subject of insurance. This was the doctrine of a bench composed of such time honored names as Chief Justice Kent, Justices Thompson, Spenoeb, Van Hess and Tates, and has remained unshaken and unquestioned in this State to this day, for I do not regard an apparent concession in a dictum of the late Chief Justice Jones in this Court, in the case of Robbins v. The New York, Ins. Co., (1 Hall S. C. R., 325,) as at all infringing upon the doctrine; the principle countenanced was not involved in the *553 decision of that case, and at most was the expression of a doubt. Besides, in a subsequent case in the same book, (Mellen et al. v. National Ins. Co., 1 Hall, 436,) his judicial mind swung back to its proper resting place; in that case the lost profits on freight were claimed under a policy on freight generally, and the language used by him was: “ The most cursory view of this policy must satisfy any observer, that it had no reference to any interest in the assured as charterers, covering the surplus of freight reserved over that payable to the oivner for the voyage. In terms, it is a general insurance on the freight of the vessel for the voyage, and it may be questioned, whether standing unexplained as it does, it is not to be restricted to the freight she was to earn for her otoners.” The view so taken by that eminent Jurist, corresponded with that taken by the Supreme Court of this State, in the early case of Cheriot v. Barker, (2 J. R., 346,) where payments on account of freight under a charter party, were held not to be covered by a policy on freight eo nomine; the same principle was adopted in that case as to enlarging the meaning of the word, as in the subsequent case of Riley v. Delafield, which only reiterated and confirmed it in unmistakable language.
The principles so long established in this State as to the meaning of the word freight and the danger of departing from it, have not met with the same favor elsewhere, particularly in the State of Massachusetts. An eminent elementary writer of that State, claims, in his work on insurance, (1 Phil. on Ins., § 480,) that a charterer whose payments on account of freight are at risk, as well as those who are assignees of or have liens on such freight, may cover their interest by an insurance on freight generally. He declares that the grounds on which Riley v. Delafield proceeded, were not satisfactory, and that it was opposed to other decisions, and he names the cases of Taylor v. Wilson, (15 East., 324 ;) Oliver v. Green, (3 Mass. R., 133 ;) Bartlet v. Walter, (13 Id., 267 ;) and Clark v. Ocean Insurance Company, (16 Pick., 289.) The first of such cited cases, (Taylor v. Wilson,) involves no similar doctrine, the only *554 question having been, whether freight could be insured for part of a round voyage. In both the next cases, the assured was substantially the insurer of the owners of the vessel, and at the same time conducted the voyage and her management, and was, of course, interested in her safety. In the first of them, (Oliver v. Green,) the assured was an owner and agreed to indemnify his co-owner in case of the loss of the vessel under his management; in the other, (Bartlet v. Walter,) he was only charterer. In the last one, (Clark v. Ocean Ins. Co.,) it was held that the charterer who had his interest in the freight payable by him, at risk, might insure that as well as the owner. Hone of these are adverse to the principle laid down in Riley v. Delafield, where the assured had no interest in the vessel, her equipment or management, on the contrary, the assured in all the Massachusetts cases cited, was directly interested in her preservation, and had control of her. This point seems entirely overlooked by the learned commentator referred to. In Oliver v. Green, the Court, in giving its opinion, dwells on the fact that the omission by the assured to disclose the special character of his interest was not material to the risk, as he was interested to preserve the vessel, in like manner as if he were owner, which is presupposed by the term freight. As Mr. Phillips has omitted to state why he considers the reasoning in Riley v. Delafield, unsatisfactory, it would be useless to attempt to conjecture upon what ground he thought so.
But it is also laid down by the same writer, that a charterer interested in any part of the real freight of a vessel, or bound to make it good at all events, may insure it under the general name of freight without specifying his real interest. (§ 480.) He gives as an instance of such interest, advances by a charterer to an owner on account of freight, (§ 482,) citing, as authorities for his position in that case, Etches v. Aldan, (1 Mann. & Ryl., 165 ; and 17 Serg. & L., 229,) especially if such charterer has a lien for such advances, for which he cites the case of Robbins v. New York Ins. Co., already referred to, or may in any way *555 lose such advances, for which he refers to Samson v. Ball, (4 Dall., 459.) He, however, refers to Cheriot v. Barker, (ubi sup.,) as authority for the doctrine that the interest of a charterer insured for freight is only for the excess of the freightage he is to receive above the freight he is to pay. I have already adverted to the only part of the opinion in Robbins v. New York Ins. Co., which seems to sanction the doctrine contended for by Mr. Phillips, and for which, in that case, Samson v. Ball was referred to as authority, but does not bear it out; that dictum goes beyond the doctrine for which it is cited as authority, being to the effect that a charterer has, in all cases, a lien, for his advances to ship-owners, upon freight due by him, and is, therefore, a quasi mortgagee; for which I am compelled to say, with all deference, I can find no authority. Riley v. Delafield, cited with approbation in the decision, while the interest of the assured was stronger than the case of an assignee, is against it. In Mellen v. The National Ins. Co., already referred to, where there-was ample room for establishing it, the doctrine seems to have been taken back and the case decided as a' question of fact. Robbins v. The New York Ins. Co. may, therefore, be rejected as no authority for the doctrine.
But if the principle of the author just cited is to be sustained, the owner of a chartered vessel, the mortgagee of her freight, and a charterer who makes profits from hiring her and letting her out, could insure their interests at the same- time, by the same name:—nay, a charterer could insure any advances made by him on account of freight to become due from him, his interest in such freight if payable by him at all events, and his profits by the carriage of the goods of himself, and others, by one name in the same policy. This, certainly, has a tendency to confuse the meaning of words, which have acquired a fixed legal signification, long adhered to. (Bargett v. Orient Mutual Insurance Company, 3 Bosw., 397.) It permits one who has not the interest of an owner in the staunchness of a vessel, and the sufficiency of its equip *556 inent, to insure by a name appropriated to an owner’s interest, and admits of an accumulation of insurance upon the same subject, both of which are unquestionably evils to be avoided. Such results could not happen, if such name were confined to its original meaning, which included only the interest of an owner. Both those evils are deprecated in Riley v. Delafield, with whose reasoning no Court in this State ought to be dissatisfied, however prevalent a different doctrine may be in the State of Massachusetts. In this very case, the owners of the vessel have recovered an insurance on their interest, by the same name by which the assignors of the plaintiff were insured, and it is difficult to imagine how both could suffer a loss of interest by the same description, when" not jointly interested.
If, however, the early decisions of this State are to be overruled by those of Massachusetts, already alluded to, even they require that the nature of the interest insured, or the fact that the insured was not owner, should be disclosed, as material to the risk. In Cheriot v. Barker, (ubi sup.,) Justice Thompsoh, in delivering the opinion of the Court, says: “It is a good general rule to require the subject insured to be clearly and plainly expressed upon the face of the policy so that the underwriter may be apprised of what he insures. It is extremely easy for the assured to specify his particular interest, and it would be unreasonable to allow him to avail himself, under a general expression, of a concealed particular interest contrary to custom and usage,” and he referred to an English case, (3 Burr., 1401,) where a bottomry bond was held not to be covered by an insurance on cargo. He might have referred to cases in this State where it was not by an insurance on the vessel. But even allowing that a disclosure of the particular interest may be sufficient without being inserted in the policy, there was no proof of such disclosure in this case. If advances made by the insured on the strength of the charter party were at risk, it does not so appear by such instrument or any other evidence, or even that he *557 made any; which was the fatal defect in Robbins v. New York Insurance Company. If the freightage to be received by the charterers for the carriage of other goods exceeded the amounts payable under the charter party, no evidence established it and the case would be controlled by Mellen v. National Insurance Company.
The statement in the policy, however, that the policy was to be proof of interest, is claimed to be such an admission of interest in the plaintiffs as to preclude the necessity of proof of it, or constitute a waiver of the obligation to disclose its nature. In answer to the first objection, there is only to be said that it merely makes the policy prima facie evidence, and throws the burden of disproving it on the defendants; but it does not profess to admit either that the defendants knew what its precise nature was, or that any material fact as to it had been disclosed. Such a doctrine would tend much to facilitate wager policies, and should be discountenanced. There is, therefore, no evidence in the case, of a disclosure to the defendants, at the time of the insurance, of the real nature of the interest of the assured; and they appear not to have had any interest capable of being insured under the name of freight, without such disclosure. They can, therefore, only recover a return premium, because the risk never attached.
Under this aspect of the" case, the question as to the number of voyages or risks in the policy would be immaterial, unless the case went back to a new trial. If there was but one, the plaintiffs are not entitled to recover, because the vessel earned freight on the voyage to Bombay, and there was no total loss. The route is described in the policy as “ at and from Whampoa to Bombay, and thence back to Woosung,” and the risk is declared to begin from the loading on board at Whampoa, and to continue until the cargo should “ be safely landed at Bombay and Woosung;” but the policy was altered by the liberty granted by the defendants to make Whampoa the terminus of the voyage described in the policy. Ho evi *558 dence was offered when this was done. If done before the vessel arrived at Bombay, it would make the voyage covered by the policy to be from Whampoa to Bombay and back, in which case it clearly could not have intended only one voyage, as the subject insured was freight, and against only a total loss, and the landing of any cargo on the route, therefore, would have saved the policy. (Hugg v. Augusta Insurance Co., 7 How. S. C. R., 610 ; Insurance Co. of Valley, &c., v. Mordecai, 22 Id., 116.) If done after the arrival at Bombay, it would constitute a new insurance from thence to Whampoa.
The overestimate of the height, or profits on it, is not so monstrously disproportioned to the freight which the vessel could earn, as to make it as matter of law void as a wager policy; but it is perhaps enough to entitle the defendants to have it disposed of by a Jury as a question of fact, in case of a new trial, and it be material.
But upon the grounds before stated, the defendants are entitled to a new trial, and the verdict for the plaintiff should be set aside, with costs to abide the event.
White, J.
The claim of the plaintiffs in the action is resisted by the defendants upon the grounds :
That the plaintiffs’ assignors (Eye Brothers & Co.,) had no insurable interest in the freight, being only charterers and not owners of the vessel; that the policy was intended to be a policy of insurance on “ freight,” and that none but owners could insure “ freight,” eo nomine;
That the plaintiffs suffered nothing by the loss of the vessel, as the loss discharged them from all further liability to pay anything on the charter party;
That the freight of the vessel could not have exceeded $5,206.25 on the return voyage, and that the valuation in the policy at so high a sum as $15,000, rendered it a wager policy, and therefore void;
That it did not appear that the vessel carried cargo on freight, on the voyage in question, for other parties than the charterers themselves;
*559 That the voyage covered by the policy was one continuous voyage, and that freight having been earned on the passage out to Bombay, there was no total loss; and that the risk terminated at Bombay, upon the freight of the passage out being earned by the delivery of cargo there;
That 75 bales of cotton and some other articles were saved from the wreck, and taken by the salvors to Hong Kong, and that freight was thereby earned upon that portion of the cargo, so that the loss on the voyage home was not total.
Considering these objections to the plaintiffs’ claim in the reverse order in which they are above stated, I do not think the rescue of part of the cargo by salvors, and the delivery of it by them at Hong Kong,, subject to their claims, which, it appears, rendered a sale of it and the delivery of all its proceeds to them necessary, can be considered as a delivery by the vessel at the port of destination, so as to entitle the vessel to the payment of freight from the owners of the cargo thus saved. And also it does not appear in the case that a delivery of cargo at Hong Kong, would be a fulfillment of the vessel’s contract with the shippers, or a completion of the voyage, which was to terminate at Whampoa.
With respect to the objection, that the voyage covered by the insurance was but one voyage, and that the risk terminated upon the safe delivery of the outward bound cargo at Bombay, I think that such a construction is too unreasonable to be admissible, unless compelled by clear and unequivocal words in the policy.
The obligations of a contract insuring the safety of any subject while passing from one point to another, can necessarily only terminate when that latter point is reached. But by the construction for which the defendants contend, the obligation of their contract was to cease midway the voyage, the protection of their insurance was to be withdrawn so soon as the outward passage' only of the vessel was performed, although the policy professed to cover the whole voyage, and to insure all the way back *560 to Whampoa. Such a construction cannot, in any reason, be presumed to have been the intention of the contracting parties, and it is certainly not expressed in terms in the policy. It is manifest that it must have been intended to insure something from Bombay to Whampoa, and it cannot be supposed that the vessel was to retain on board and bring back to Whampoa any portion of the goods which she had carried from Whampoa to Bombay. It was clearly contemplated by all parties that fresh cargo was to be shipped at Bombay, and transported from thence on the return passage to Whampoa; and it must be obvious to the most ordinary understanding that it was the compensation, or profits to be realized from transportation of this Bombay freight, and nothing else, that was insured by the underwriters when they inserted in the policy the words, “ and thence back to Whampoa.”
The objection that the vessel carried no cargo belonging to parties other than the charterers, is not sustained by the case, as it may be not unreasonably concluded from the testimony of Hubbell, one of the witnesses, that the plaintiffs, on the return passage, had cargo on board for other parties, for which they, the plaintiffs, were to receive freight. But this would not be necessary to enable them to recover if otherwise entitled. In the case of Flint v. Flemyng, (1 Barn. & Adolph,) it was held, that upon a policy of insurance of “ freight,” eo nomine, the ship-owner could recover though all the goods shipped on the vessel were his own.
Hor is the objection taken to the policy, for over valuation of the subject insured, well founded. If an insured has some insurable interest in the subject of insurance, the fact that an accurate valuation has not been made in the policy does not render it a wager, although the amount of valuation may be excessive. A valuation has been held binding on the insurers, even when it proved to be three times the actual value of the subject at risk. (Coolidge v. Gloucester Marine Ins. Co., 15 Mass. R., 341.) The proper test to be applied in such cases is the question of intention and *561 good faith of the parties. If everything has been fair, if there has been no evasion, no fraudulent concealment, no design that the policy should be a cover for a wager, but the object was in good faith indemnity, then the valuation will not be disturbed, except perhaps in some case of very gross disproportion between the real and nominal value; and this will especially be the rule when there is any uncertainty, at the time of insurance, as to what the freight or other thing insured will amount to. And in cases in which a Court will feel called upon to interfere with the valuation of the policy, if any substantial interest is proved, it will go no further than to set aside the policy valuation and give judgment for the actual interest. (Clark v. Ocean Ins. Co., 16 Pick., 295.)
The only remaining objection is the most important one in the cases that the plaintiffs had no insurable interest in the earnings of the vessel upon the voyage on which she was lost.
I think, however, that this objection is not supported by the facts presented. Without feeling called upon to admit, under the proof before us, that the plaintiffs could claim to the full extent of the valuation in the policy, I think that there is sufficient testimony to justify us in saying they are entitled to recover the full amount of the ship’s freight lists on the homeward voyage. The argument used by the defendants against such a conclusion is twofold,; first, that the plaintiffs were only charterers of the vessel, and, being such, could have no interest or property in the earnings or profits accruing from her use, which could, in strictness, be denominated “freight;”—that term, it is contended, being appropriate only to the compensation or money which an owner receives for the use of his vessel; and the plaintiffs having undertaken, in the policy, to insure “freight,” and possessing no interest that could properly be denominated “ freight,” they insured that which they had not, and the policy was therefore void. The secofid branch of the argument is, that the only interest which a charterer can have in the earnings of a vessel is in the *562 profits—the surplus or excess which he may. receive for the vessel’s use over what he must pay for the same thing to the owner; and that there is no evidence in this case that the plaintiffs had any such profits or surplus; and if they had, it could only be covered by a special insurance describing that peculiar interest, and not by a general policy on “freight,” such as that upon which this action is brought.
Bespecting the first portions of the argument, that “freight,” in strictness, means only the compensation paid to an owner, and will be held to mean only that, in any policy in which it is used as descriptive of the interest insured, I think that such a principle of interpretation must be accompanied with many qualifications. It is true, that it is important as a general rule, to limit the use of words to their proper and well established signification, but too great zeal for mere literal proprieties, may, sometimes, cause justice and the substance of things to be overlooked. A rule limiting the sense in which a word may be received, must not be adhered to in derogation of the maxim, that the aim of judicial action should always be, to sustain, rather than to destroy contracts—liut res magis valeat quam pereat.” A Court may adjudicate, but not make contracts for its suitors, and the main purpose of its inquiries, in cases of questionable meaning or con-' stmction, should be to ascertain what the parties intended, in what sense they used the words that are made the subject of discussion, and to give full effect, if possible, to that intent and meaning, however inaccurate the terms employed may have been. And we have some instances in reported decisions, in which this elementary principle of construction is recognized in reference to the use of this very word “freight.” In Samson v. Ball, (4 Dallas, 459,) the plaintiff had purchased and paid for f of the tonnage of a vessel, to be used by him as he might think proper on a certain voyage. He obtained a cargo to that extent, and insured his interest with the defendant under the description in the policy of “freight advanced.” The *563 vessel was lost, and his claim, on the policy was resisted upon the ground, that in his special relation to the vessel, the term, “freight advanced,” was not a true description of his interest. But there appearing to be no fraudulent concealment or misrepresentation, the Court held the word sufficient, and gave judgment for the full valuation in the policy. In Flint v. Flemyng, (1 Barn. & Ad., 48,) above cited, the owner of the vessel shipped his own goods upon her for a voyage, and effected an insurance for a certain amount of “freight,” eo nomine. The vessel was lost on the voyage, and payment of the jiolicy was refused, on the ground that the plaintiff had no interest on that voyage which he could insure as “freight.” Lord Tebtderdeít, however, held, that he might recover under that name or description, as the value of the goods would have been enhanced by their carriage to the port of destination; in which opinion the other Judges concurred, Mr. Justice Paree, remarking: “The term ‘freight’ may be inaccurate, but the meaning, as between the parties, is intelligible.” And in delivering the judgment of the Court in the case of Peisch v. Dixon, (1 Mason, 12,) Mr. Justice Story said, “The word ‘freight’ has several meanings in common parlance, and parol evidence might be admitted to show in which sense the parties intended to use the term.” This is the true principle that will always insure equal justice, which can seldom be attained under the operation of the other rule that arbitrarily avoids every policy, in which, through ignorance, mistake or inadvertence, the term “freight” has been used to describe some interest, other than the ship-owner’s, in a vesssel’ earnings.
The only reason with any practical point in it that is given for setting aside every policy in which the word “freight” is used, when the interest is not that of the owner of the vessel, is, that when insuring freight accruing to the owner of a vessel the underwriter has, in the natural solicitude of the owner for the safety of his vessel, as well as of his freight, an additional safeguard against possible liability on the policy, and he may be induced by that cir *564 cmnstance to take a risk, which, without it, he would have refused; and when he knows nothing of the interest or subject insured but that it is represented to him to be “ freight,” which in strictness and primarily means the ship-owner’s interest in the vessel’s earnings, while in fact the interest tendered to him for insurance is but that of a mere charterer for a voyage, he is deceived and grants an insurance upon a consideration that did not exist, and of which he never had the benefit. This is all true. The character of the individual insured, and his relation to, and interest in, the subject of insurance, are all proper and important considerations with an insurer in deciding whether to accept or refuse a risk, and he should not be held to the performance of a contract in which any deceit or intentional concealment in that respect was practised towards him. But the propriety of all this is implied and admitted in the view that I have taken of the present case. The obligation of the policy should only be sustained when everything is fair, open and honest; but the mere insertion, in a policy like the present one, of the word “ freight,” as descriptive of the interest insured, ought not to be regarded as rendering it impossible that it could have been used by the parties in any other sense than one indicating a shipowner’s interest. On the contrary, it should be permitted to the plaintiffs to show the truth, to show, if such was the fact, that the insurers knew what the interest was which they were insuring, and were not only content but chose of their own will to express it by that word “ freight,” using the word in some popular rather than technical or legal sense. This would seem to be but the simplest justice, the merest common sense, and not bad law. It is the more reasonable, too, (especially when the underwriters are the parties who cavil about words',) from the well known fact that in practice these policies, which are executed only by the insurers, are all drawn up by them, and usually (as the present one is), in very loose, inaccurate and even inconsistent terms. The admission of proof extrinsic of the policies, to ascertain the sense in which the parties used *565 and understood the words in the contract descriptive of its subject, is not a violation of the rule that prohibits the introduction of parol evidence to contradict or vary a written instrument. In the language of the late Chief Justice Duer, in his learned treatise on Insurance, vol. 1, p. 170, “the evidence that is prescribed (by the rules excluding parol testimony), relates to the terms of an agreement and not to its stibjecV’ This distinction is important, and it may also be said that a resort in such cases to the aid of extrinsic evidence may be regarded not as an attempt to contradict, by parol proof, a written instrument, but as analogous to the common and well-established practice of admitting testimony to relieve a party from the consequences of a mistake or clerical error, or any other mere inadvertence or lapse, which if not corrected would lead to a failure of justice. It would be, in a word, in this case, nothing more than allowing an insured, when he is charged with fraud and deception, because a particular phrase is inserted in a policy to reply and show that the party charging such fraud had full knowledge at the time of all the facts of which he now pretends ignorance, and himself used, in order to express those facts, the phrase of which he complains. To exclude this explanatory proof would be, in effect, to annihilate the contract of the parties or hold them to one which they have never made. To borrow again the language of Chief Justice Duer, in the work already referred to, “it would be annulling the contract by converting a venial and easily removable error into a fatal vice.” And all these enlarged and just principles should be the more readily applied to the case of a policy of insurance, in the construction of which it is most especially a fundamental rule, that it should be interpreted liberally in favor of the assured and strictly against the insurer.
In the views already expressed, it is designed to enforce the principle,- as applicable to all charterers, that in a policy insuring their interest in a ship’s earnings, the use of the word “freight,” as descriptive of that interest, does *566 not furnish sufficient ground for defeating the policy, if the true nature of the interest was well known to the insurer, and the word “freight” was inserted by him in the policy, in the full light of that knowledge. If this principle is correct as a general rule, even in the more common and numerous class of cases in which the charter is but for one voyage, and the charter money is payable only upon the true delivery of the cargo at the port of destination, it will be readily perceived that such a rule-must apply with much greater force in the case of a charter such as that held by the plaintiffs in the present action.
In the leading cases cited to sustain the position, that the use of the word “ freight ” in the policy is a fatal misdescription of the charterer’s interest, the charter parties were, every one of them, made but for a single voyage, and the payment of the charter money was dependent upon the right performance of that voyage. It was so in Mellen v. The National Ins. Co., (1 Hall, 452 ;) Cheriot v. Barker, (2 Johns., 346 ;) and Robbins v. The New York Ins. Co., (1 Hall, 325,) which are the decisions mainly relied upon to sustain the defense. In these cases the charter was little more than a bill of lading. In Cheriot v. Barker, [supra,) the Court expressly say, that the charter in that case was but a mere covenant on the part of the shipowner to carry the goods, and of the charterer to pay a certain sum for their carriage upon the stipulated voyage, provided a true and safe delivery was made at the port of destination. It needs but to read the charter of the plaintiffs in this action to see how little analogy there is in the rights, position and circumstances of the parties in the two cases, and how little propriety there could be in making the decision in one, the law by which the other should be judged.
In Cheriot v. Barker, and so also in the concurrent cases above named, if the voyage failed, the charterer paid substantially nothing. Under such circumstances there was strong provocation to hold that there was no insurable interest. In Mellen v. The National Ins. Co., (1 Hall, *567 462, 463,) Chief Justice Jones states, with careful precision, the extent to which this Court, and the Supreme Court of this State, had gone in defeating policies in which the word “freight” had been used to describe another interest than the ship-owners. He there says: “It is settled by the Supreme Court, in the case of Cheriot v. Barker, and Riley v. Delafield, and in the late case of Robbins v. The New York Ins. Co., in this Court, that the charterer of a vessel, who is to pay the charter money for the use of the vessel at the end of the voyage, cannot insure the freight of her eo nomine.” That is the whole extent to which the decisions had then gone, and Chief Justice Jones, and the other members of this Court, went no further in the case then before them; and I do not know that any Court has since then exceeded that limit in applying this severe rule. But the plaintiffs, in this case, very clearly do not come within the rule thus stated. Their charter was of a very different character. The charterers were not to pay the charter money at the end of the voyage. The whole vessel was hired out absolutely to them, for a term of one or more years, at a certain monthly charge. The full control of the bark passed to them from the owners for a definite period of time, without reference to the performance of any particular voyage or voyages, the accomplishment or non-accomplishment of them. The charterers might send her upon one hundred voyages to different ports and places, or they might lay her up idly at home through the whole term, and still they were bound to pay the monthly hire. If she were lost on a voyage and her whole cargo perished, and with it the compensation or freight money that would accrue to the charterers upon its safe carriage, still, if a monthly payment had fallen due before the loss, although during the voyage, the owner would receive and the charterers make payment. If the vessel were lost during the currency of one of the monthly periods for which the rent or hire was to accrue, the charterers might, perhaps, on general principles, not of maritime alone, but of all law, escape payment for the odd days, the fractional *568 part, which had elapsed, of that current mouth. But a voyage might last one, two or three months or more; and if it so happened that just as the third month had been completed the vessel was lost, the charterers should still pay the hire for the three months, though ail the freight of the voyage had been lost to them by the disaster. Surely there could be no justice or propriety in classing the interest of these charterers with that of persons who had chartered a vessel for one voyage with a stipulation that, if the voyage were not duly performed, the charterer should pay nothing. They neither belong to the same category, nor should they be adjudicated as if they did. Charterers, such as the plaintiffs’ assignors, stand pro lute vice in the place of the owner, with whose rights, in relation to the freight and the control of the vessel, theirs are, in almost every material legal aspect, identical. They are the persons who contract with and are responsible to the freighters or shippers of cargo, and receive pay for its carriage. The owner has nothing to do with these matters. He receives his charter money from the charterers and that is all; and that is not freight, for it has to be paid if there never were a pound of cargo placed on the ship; and, in many cases, as has been shown, it would have to be paid although vessel and cargo were lost on the voyage, and the charterers’ right to receive freight for the transportation of the goods had perished with them. Under such circumstances, if there is any one who had no insurable interest in the vessel’s “ freight,” eo nomine, pending the existence of that charter-party, the owner of the ship is that person, and not the charterer. The owner, it might much more reasonably be held, could not insure his interest under that charter as freight, eo nomine, without suffering the consequences of a misdescription of interest. And so we find, from the testimony in this very case, that the owners of the “Mermaid” did not insure their interest simply as “freight.” They insured it as an “interest on freight or chaetee of the bark Mermaid.” In one of the cases already referred to, (Clark v. Ocean Ins. Co., 16 Pick., *569 294,) the same position is taken respecting the rights of owner and charterer. The Courts there say that money paid for the hire of a ship for a term of years is no more to be termed “freight” than money paid for an absolute property in a ship would be.
These views will be further confirmed by a consideration of the suggestion, for which authorities were cited by the defendants, that the only insurable interest which the plaintiffs as charterers could have, would be the surplus or profits of the voyage, that is, the excess (if there should be any) of their receipts for the transportation of the cargo over and above' the amount which they should pay to the owner according to the charter party. This rule, or measure of interest, may be properly applied in the ordinary case of a charter party for a particular voyage, under which nothing is to be paid by the charterer to the owner, nor received by him from the freighters, unless the voyage is performed. Under a charter party of that kind, the interest of the charterer is the surplus that may remain of the freight, after deducting from it the amount of charter money to be paid to the owner; and the comparison of these two amounts—the freight and the charter flioney—will, at all times, show whether the charterer has or has not an insurable interest, and its extent, if he has any. But in the other case of a charter party, such as the plaintiffs’, it would be impossible to apply this rule, or, .by any such process as that stated, to determine the charterer’s interest. The circumstances of the case, being wholly different, would not permit it. In the case of the plaintiffs, the amount of the freight list is known, but the amount which the charterer is to pay during that particular voyage, is wholly unknown, because it is dependent upon the length of time which the voyage will consume, and that is entirely uncertain. It will not obviate this objection to say, that it may be calculated and ascertained after the voyage is performed, because the charterer must have a certain indefeasible interest when the policy is issued; and it would be an absurdity *570 to assert that he had an insurable interest when the insurance was effected, but that as he proceeded on the voyage, delayed by adverse winds and currents, it disappeared gradually and totally as payments came due and were made by him from time to time upon account of the charter party. Again, a voyage may be so unusually protracted by unpropitious events, that the charterer during its progress would pay the ship-owner monthly hire to twice the amount of the freight; and his doing so would, according to this rule, limiting the charterers interest to profits or surplus, produce the irrational consequence, that as he could now make no profits by the freight, he had no insurable interest in it; although after making those monthly payments, the freight continued to be just as much his exclusive property, was just as valuable to him, and all his interest in it, and, in the voyage, was just as much at risk, as it ever had been or could be. It is said in the cases cited by the defendants on this point, that the underwriters should be relieved from their liability on the policy in case of loss, because the charterer by the same loss would be relieved from his liability to the owner; but in the case of a charter party like the present one, the loss of the vessel upon any voyage would not always, nor certainly relieve the charterer from liability to pay the monthly hire. A case can be supposed in which the vessel might be thirty-two days at sea. On the thirty-first day, the monthly hire, exceeding the whole freight might fall due, and be paid by the charterer. On the thirty-second day the vessel might be lost within sight of its port of destination. The charterer, in such case, would have been discharged from nothing, for he had just paid the monthly hire; but yet his insurance would be rendered void by this theory, that the charterer has only an insurable interest when he makes a profit by the voyage. Being impoverished by the concurrence of payments on his charter, and loss of his freight by shipwreck, he has, according to the principles contended for, no indemnity. The case might be presented under an end *571 less variety of circumstances, all illustrating in like manner the injustice or absurdity of applying the doctrine to the fights of charterers such as the plaintiffs. But it is not necessary to multiply instances. They will suggest themselves to every mind, upon slight reflection. It would seem to be almost as reasonable for an underwriter to claim exemption from obligation, in case of loss, to pay a ship-owner who had insured his freight, on the ground that by the shipwreck the owner was absolved from liability for the seaman’s wages, as to claim the discharge which is set up in the present case.
The conclusions on this point may be stated briefly by saying that a charterer under a charter like that held by the plaintiffs, has always an insurable interest in the freight, that such interest, not being dependent upon any question of profits nor capable of being ascertained at the time of issuing the policy by a calculation of the profits of any particular voyage insured, but being an absolute interest, the ship’s freight list must, ex necessitate rei, be accepted as the true measure of the charterer’s interest. His title to and interest in the freight insured for any particular voyage are of the same nature as a ship-owner’s, they are co-extensive with the whole freight.
Some objection to the plaintiffs’ recovery has been suggested, on the ground that it would be permitting a double insurance of the same subject; that the ship-owners having obtained indemnity for loss under their policy, freight, as a subject of insurance, in this case, was exhausted. But that is not correct. Owners of different interests in the same subject, mortgagor and mortgagee, consignor or consignee, ship-owner and charterer, may each insure his separate interest in the same subject; and a claim or recovery by one will not affect the rights of the other. Nothing is better settled than this. Double insurance exists only where one person effects two insurances of the same subject. On this whole subject, then, the conclusions to which, I think, the law and the facts irresistibly lead, are these:
*572 1. That when the charter money under a charter party for a particular voyage is payable only on the due performance of the voyage, the charterer has no insurable interest, unless the freight or benefit to accrue to him from the voyage exceeds in value what he has to pay to the owner; or, as it is' stated in 1 Phil. on Ins., § 483, “ If the amount to be paid by the charterer to the owner is equal to that which he will receive, loth depending on the same contingencies, the charterer has no insurable interest in freight, as he can neither gain nor lose by its being earned or lost.” But if the freight or benefit to accrue to him does exceed what he has to pay to the owner, he has an insurable interest to the extent of that surplus or profit.
2. That when the charterer has an insurable interest in the surplus or profits, under such a charter as is just mentioned, the more reasonable doctrine, (although there is a conflict of authorities on the question,) is, that he can insure such interest as “freight” eo nomine, (1 Phil. on Ins., §§ 480, 483 ; Clark v. Ocean Ins. Co., 16 Pick, 289 ;) and if any objection of fraudulent concealment or misdescription is made, the charterer should be permitted to give the truth in evidence, and show (if such was the fact) that there was no fraudulent suppression, but that, on the contrary, the insurer had full information and knowledge of the true character of the subject or interest insured.
3. But under a charter party for the hire of a ship for a term of years, or other definite term, the hire being payable monthly, or upon the expiration of other stated periods of time, without reference to the performance of any particular voyage or voyages, the charterer, as it respects the freight of the vessel, stands pro hac vice in the place of the ship-owner; the whole freight upon each voyage belongs to him; is his property, absolutely and exclusively; his interest in it is co-extensive with it, is nothing but “ freight;” can be so well described by no other term than “freight,” and is properly insured as “freight,” eo nomine—the insurance being, not of his general or entire interest in the charter, which would reach to future voya *573 ges, but of his interest in the freight of one particular voyage, as is the case in the policy now under consideration.
4. That the valuation of the subject insured being ex-cessive in a policy, does not render it a wager policy, if the insurer had a substantial insurable interest, unless the disproportion is so gross as to produce the conviction that the valuation could only have been intended by the parties as a wager, and not for any purpose of indemnity; which cannot be said of the valuation in the present action. In cases of important discrepancy between the real and the policy valuation, arising from exaggerated expectations of profit, or other excusable error, the Court will give judgment according to the true value, and I think that this is one of those cases; and I will add what I have omitted before, that we have no knowledge or information of the law of China on the subject, if it has any; and that this contract must be judged by the laws of Yew York.
5. That freight is not earned upon goods taken by salvors from a wreck, so as to make a loss of freight partial instead of total, when those goods are sold and their proceeds wholly appropriated to the payment of salvage under legal proceedings taken by the salvors
In my opinion, therefore, a new trial should be ordered in this case, with costs to abide the event; the rights of the parties to be ascertained upon the principles above declared.