4 U.S. 459 (____)
4 Dall. 459
Sansom
versus
Ball.
Supreme Court of United States.

*461 Lewis, Rawle, and J. Sergeant, for the plaintiff.
M'Kean (Attorney-General) and Ingersoll, for the defendant.
TILGHMAN, Chief Justice. In this case two questions have been made:
1st. Had the plaintiff an insurable interest?
2d. If it was insurable, was it liable to a general average?
1st. In order to determine whether the plaintiff's interest was insurable, we must first ascertain the nature of it. It seems to be a kind of interest, not much known in Europe, though well known in this city. The plaintiff advanced a sum of money to the owners of the ship, in consideration of which, they gave him a right to fill up three-eights of the tonnage of the ship, for that voyage, with goods, either his own, or the property of others. It is called in the policy, "freight advanced," an expression well calculated to shew its meaning. All countries, and even all cities, have singularities of expression. All new inventions, either in commerce or the arts, give rise to new modes of speech, which, when once introduced into contracts, are recognized by Courts of justice, whose duty it is to carry into execution the intention of the contracting parties. Now, what is there in this interest, which should exclude it from the benefit of insurance? there is nothing unlawful in it. It is subject to loss; for, whether the plaintiff used the tonnage for the transportation of his own goods, or of the goods of others, he would lose his money, unless the ship performed the voyage in safety. Indeed, I think Mr. Ingersoll, in *462 arguing for the defendant, conceded that the plaintiff's interest might have been insured, if it had been properly described; but he conceived it to be in the nature of bottomry. This is certainly cannot be; there was no loan of money. Messrs. Walns were obliged to make no payment to the plaintiff, but the plaintiff was entitled to make what he could from the tonnage he had purchased. Whether it was more, or less, Messrs. Walns had nothing to do with it. The testimony of Mr. Fitzsimmons goes far towards proving, that the plaintiff's interest was well described, and was a proper object of insurance. In the case of Gregory v. Christie, (Park. 11.) my Lord Mansfield thus expresses himself, "I should "think that the words "goods, specie, and effects," did not extend "to the plaintiff's interest, if we were only to consider the words "by themselves. But here is an express usage, which must govern "our decision. A great many captains in the East India "service swear, that this kind of interest is always insured in "this way." Now, though there have not been a great many witnesses in this cause, yet there has been one, very much conversant in the business of insurance, who stands uncontradicted. Upon this first point, therefore, the insurability of the plaintiff's interest, whether it is considered on principle, or on usage, I have no doubt but the law is with the plaintiff.
2d. But was the plaintiff's interest liable to general average?
General average, or general contribution, is founded on principles of justice and sound policy. It arises, when a sacrifice of part has been made for the preservation of the residue, or, when money is expended, to preserve the whole. Thus, the loss occasioned by cutting away of masts, or throwing goods overboard to lighten the ship, in a storm, or money paid to redeem ship and cargo, which had been captured, are subjects of general average; ship, cargo, and freight, have been benefited, and therefore all must contribute. In the present instance, a compromise was made with the recaptors? Was it for the benefit of all persons concerned in ship, cargo, and freight? for, if it was, if falls within the rule of general average. It appears to me that it was for the benefit of all concerned. It prevented a sale of both ship and cargo, which must have injured all concerned. It would certainly have injured the plaintiff, who had goods on board to a large amount, and he had paid in advance, for the freight of these goods. Of whatever nature the plaintiff's interest was, it was liable to salvage. Sir William Scott's opinion[(1)] is, that salvage is due, for ship, cargo, and freight. But the defendant's counsel object, that general average never arises but from the voluntary act of man, and here, say they, was no voluntary act; for, salvage was decreed by the Court. This argument is rather to refined. Let us consider it. It is true, that the agency and consent of man, must intervene, to produce a general average; but this agency and consent, though in one sense voluntary, are upon the whole, involuntary. When life is at stake, the mariner willingly *463 throws gold and diamonds into the sea. But was he willing to encounter the storm, which produced this dire necessity? General average always arises from actions produced by necessity. In the case before us, there was a capture, re-capture, and decree of salvage. The master and supercargo consented, under these circumstances, to a measure, which produced a general benefit. They surely exercised as much volition, as if they had thrown half the cargo over board in a storm. Suppose they had stood still, and suffered the ship and cargo to be sold, the underwriters would then have had to answer for the whole freight. It is better for them to be subject to a general contribution.
We are of opinion that the plaintiff is entitled to recover on this policy, according to his demand.
NOTES
[(1)] 3 Rob. 86.