

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-15-2004

# Marran v. Marran

Precedential or Non-Precedential: Precedential

Docket No. 03-3018

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Marran v. Marran" (2004). *2004 Decisions.* Paper 437.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/437

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

————

No. 03-3018

————

RACHEL MARRAN;
CLAUDIA LIBRETT,

<u>Appellants</u>

v.

MICHAEL MARRAN;
MONTGOMERY COUNTY OFFICE
OF CHILDREN AND YOUTH;
MONTGOMERY COUNTY, PA

————

On Appeal from the United States
District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-01709)
District Judge: Hon. Michael M. Baylson

————

Argued April 13, 2004

BEFORE: RENDELL, COWEN and
LAY*, <u>Circuit Judges</u>

(Filed July 15, 2004)

————

*Honorable Donald P. Lay, Senior
United States Circuit Judge for the
Eighth Circuit, sitting by designation.

R. Nicholas Gimbel, Esq. (Argued)
McCarter & English
1735 Market Street, Suite 700
Philadelphia, PA 19103

Counsel for Appellants

Gavin P. Lentz, Esq.
Stephen E. Skovron, Esq. (Argued)
Bochetto & Lentz
1524 Locust Street
Philadelphia, PA 19102

Counsel for Appellee Michael Marran

Walter F. Kawalec, III, Esq. (Argued)
Marshall, Dennehey, Warner, Coleman
 & Goggin
200 Lake Drive East
Woodland Falls Corporate Park
Suite 300
Cherry Hill, NJ 08002

Counsel for Appellees Montgomery
County Office of Children and Youth;
and County of Montgomery

————

OPINION OF THE COURT

————

COWEN, <u>Circuit Judge</u>.

Claudia Librett ("Librett") and
Michael Marran ("Marran") were involved
in a protracted custody dispute over their
daughter, Rachel. After the state
proceedings had ended, Librett and Rachel
brought this action, based on the
allegations of child abuse that had been
made during the custody proceedings.

They appeal the order of the District Court dismissing their complaint under Rooker-Feldman, Younger abstention, and Rule 12(b)(6) of the Federal Rules of Civil Procedure. We will affirm the dismissal, although on somewhat different grounds than those given by the District Court.

## I.

Librett and Marran cohabited for a time in New York, but were never married. On May 21, 1999, while they were still living together, Librett gave birth to Rachel, the couple's only child. Shortly after Rachel's birth, Marran and Librett were involved in an altercation that became physical. As a result of that altercation, Marran pled guilty to a state criminal charge of harassment in the second degree, and the parties separated. By consent as approved by the family court in New York, Librett was granted sole physical and legal custody of Rachel, and Marran was allowed supervised visitation with the child. Librett was also granted permission to move with Rachel to Pennsylvania.

After Librett and Rachel moved to Pennsylvania, Marran sought to modify his visitations by filing a motion in the Court of Common Pleas of Montgomery County. Hearings in the matter began in October 2000 and continued through May 24, 2002. During this time, Marran was permitted seven unsupervised visits, which culminated in an overnight visit from December 11 to December 12, 2001. Sometime after May 2002, Librett began to suspect that Marran had sexually abused

Rachel. Librett filed several complaints of abuse with the Montgomery County Office of Children and Youth ("OCY"). She also filed petitions to modify and suspend Marran's visitations. In response, the Court of Common Pleas suspended Marran's visitation rights, and OCY conducted an investigation into the allegations. OCY ultimately determined that the allegations of sexual abuse were unfounded. Relying on these findings, the Court of Common Pleas reinstated Marran's visitation rights. On January 9, 2003, the Court of Common Pleas issued a custody order in which it found that there was nothing to substantiate Librett's allegations that Marran had sexually abused Rachel, and found that Librett was intent on excluding Marran from Rachel's life. The court then awarded joint legal custody to Marran and Librett, primary physical custody to Librett, and partial physical custody to Marran. Librett appealed the orders lifting suspension of Marran's visitation rights, denying a subsequent emergency petition based on the same events, and awarding custody. The Pennsylvania Superior Court affirmed the orders, including those dealing with the abuse allegations. An appeal to the Pennsylvania Supreme Court is now pending.[1]

---

[1] Since the custody order was issued, Librett has continually failed to produce Rachel for visitation with Marran, arguing that she should not have to because of the allegations of sexual abuse. She has not alleged any

Rather than wait for the Pennsylvania courts to rule on the appeal, Librett filed this action in the District Court for the Eastern District of Pennsylvania. Librett sought damages from Marran on her own and Rachel's behalf, as well as an injunction prohibiting Marran from abusing Rachel. The complaint alleged claims for assault and battery, breach of fiduciary duty, breach of implied contract, intentional infliction of emotional distress, and loss of earnings during minority. In addition, Librett and Rachel brought a claim under the Civil Rights Act, 42 U.S.C. § 1983, alleging that the Montgomery County defendants had violated Librett's and Rachel's constitutional rights by failing to properly investigate the allegations of abuse. The complaint sought monetary damages and a declaration that OCY's findings regarding the abuse allegations were null and void, and could not be relied upon for any purpose.

Both Marran and the Montgomery County defendants filed motions to dismiss, arguing, *inter alia*, that the District Court lacked jurisdiction over the claims under the Rooker-Feldman doctrine, that the District Court should

additional instances of abuse other than the ones deemed unfounded by OCY, and has produced no further evidence of abuse. The Court of Common Pleas held Librett in contempt for violating two separate orders in the custody case and fined Librett $500 for each day she failed to produce Rachel for visitation.

abstain from exercising its jurisdiction, and that the complaint had failed to state a claim upon which relief could be granted. On June 12, 2003, the District Court dismissed the complaint, holding that it lacked jurisdiction over all of the claims under the Rooker-Feldman doctrine. Alternatively, the District Court held that Younger abstention was proper. Finally, the District Court held that the complaint had failed to state a claim against the Montgomery County defendants. This appeal followed.

II.

As a preliminary matter, the Montgomery County defendants have filed a motion to dismiss this appeal. They argue that Librett is a fugitive from justice and should not be entitled to use this Court's resources to promote her own ends, when she is unwilling to follow the Pennsylvania court's custody orders. Although it is troubling that Librett would blatantly ignore another court's orders while seeking relief before this Court, we are not convinced that dismissal is warranted, and will deny the motion.

The Supreme Court has recognized that courts have the power to dismiss a fugitive's criminal appeal. See Molinaro v. New Jersey, 396 U.S. 365, 366 (1970) (a fugitive's escape "disentitles the defendant to call upon the resources of the Court for determination of his claims"). The Supreme Court later held, however, that a claimant's failure to appear in a criminal case does not permit a district court to grant summary judgment to the

3

government in a related civil forfeiture case. Degan v. United States, 517 U.S. 820, 829 (1996). In addition, it has held that an appellate court does not have the power to dismiss an appeal when a convicted felon who fled after conviction but before sentencing was recaptured before the appeal. Ortega-Rodriguez v. United States, 507 U.S. 234, 246 (1993). The Supreme Court reasoned that, although the fugitive's flight acted as an affront to the district court's authority, permitting "an appellate court to sanction by dismissal any conduct that exhibited disrespect for any aspect of the judicial system, even where such conduct has no connection to the course of the appellate proceedings," would sweep to broadly. Id. The Court did, however, recognize that dismissal would be appropriate if the fugitive's status in some way prejudiced the government's status as a litigant, but found that the Court of Appeals for the Eleventh Circuit had not articulated such prejudice in dismissing the case.

In the state court proceedings, Librett has failed to produce Rachel for the visitations required by the custody order. As a result, Librett has been held in contempt by the Court of Common Pleas of Montgomery County. Criminal charges have also been filed against her in Montgomery County for interfering with child custody and concealment of the whereabouts of a child, in connection with her refusal to produce Rachel under the custody order. Although the finding of contempt and the criminal charges are very troubling and relate in part to the events underlying this case, they have no direct effect on the processing of this appeal. Even assuming that Librett is a fugitive from justice, the Montgomery County defendants have not shown that her status as a fugitive would prejudice them in this appeal. We also observe that the affront was to the dignity of the Pennsylvania courts, not to this Court. Dismissing this appeal under the fugitive disentitlement doctrine would expand that doctrine even beyond the scope rejected by the Supreme Court in Ortega-Rodriguez. Moreover, the fact that Librett is not acting solely in her own capacity, but is also representing Rachel's interests, complicates the prospect of dismissal on this basis, as it would not be fair to penalize Rachel based on her mother's fugitive status. We will deny the Montgomery County defendants' motion to dismiss the appeal.

III.

A.

The District Court held that it lacked jurisdiction under the Rooker-Feldman doctrine. We exercise plenary review over the decision to grant the motion to dismiss for lack of subject matter jurisdiction. FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 839-40 (3d Cir. 1996).

The Rooker-Feldman doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460

4

U.S. 462 (1983). A case is the functional equivalent of an appeal from a state court judgment in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication. ITT Corporation v. Intelnet International Corporation, 366 F.3d 205, 210 (3d Cir. 2004). As we recently noted, almost any claim that is actually litigated will also meet the inextricably intertwined test. Id. Unless the federal claims are identical to the state court claims, determining whether the claims have been actually litigated is more difficult than determining whether the claims are inextricably intertwined with the state judgment. Id. at 211 n.8. Thus, we will begin by determining whether the current claims are inextricably intertwined with the custody determination.

A claim is inextricably intertwined with the state court adjudication when "federal relief can only be predicated upon a conviction that the state court was wrong." Parkview Assoc. v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000). "Rooker-Feldman applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered, or must take action that would render the state judgment ineffectual." FOCUS, 75 F.3d at 840.

To determine whether a particular claim for federal relief is inextricably intertwined with a prior state court decision, this Court looks at "the questions

of state law that the state court was required to reach in order to render its decision." Desi's Pizza v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003). Pennsylvania law requires that courts consider "the preference of the child as well as any other factor which legitimately impacts the child's physical, intellectual and emotional well-being" in determining custody. 23 Pa. Cons. Stat. § 5303(a). Ongoing sexual abuse, as well as continued association with a past abuser, would unquestionably impact a child's well-being. In addition, the state court is required to consider "each parent and adult household member's present and past violent or abusive conduct" in determining custody. Id. at § 5303(c). In other words, the Court of Common Pleas had to consider and adjudicate the allegations of sexual abuse in reaching its determination that Marran was entitled to joint legal custody and partial physical custody of Rachel.

Librett argues that the Court of Common Pleas refused to adjudicate the issue of whether Rachel had been sexually abused, because the judge in the custody matter deferred to the findings of the investigation conducted by OCY, rather than conduct a separate hearing on the matter. In the custody order, however, the judge explicitly discounted the opinions of Librett's experts regarding the alleged abuse, determined that reports of Rachel's behavioral problems after the overnight visit were a result of Librett's reaction to the visit rather than to any abuse, and discounted the idea that an incident of

abuse took place during supervised visit. In making these determinations, the judge considered the reports of a neutral third party, the therapist chosen by Librett to supervise the visits between Marran and Rachel. In those reports, the therapist noted that Rachel responded well to Marran and gave no indication that anything was wrong. The judge further found that, although Marran may have made mistakes as a new father, the program of supervised visitation and therapy had made him a better father, and a strong bond existed between him and Rachel. In addition, the judge referred to the findings of OCY that the allegations of abuse were unfounded, and noted that no new allegations of abuse had been made. The fact that no additional hearings were held does not mean that the issue was not adjudicated. Indeed, under Pennsylvania law the judge was required to adjudicate the issue of whether the abuse had occurred, because he was required to consider a parent's abusive conduct in making the custody determination. See 23 Pa. Cons. Stat. § 5303(a). Whether the judge erred in not holding a hearing, accepting other evidence, or allowing additional testimony after May 2002 is an issue that must be decided by the Pennsylvania courts through the appeals process.

The claims in this case fall into three categories: (1) Librett's claims against Marran; (2) Rachel's claims against Marran; and (3) the claims against the Montgomery County defendants. Librett's claims against Marran present the most straightforward application of Rooker-Feldman. Librett seeks damages for breach of fiduciary duty, breach of implied contract, intentional infliction of emotional distress, and "loss of earnings during minority." All of these claims are based on the alleged abuse of Rachel. In order for Librett to succeed on these claims, the District Court would have to find that the Court of Common Pleas erred in deciding that the allegations of abuse were unfounded. As such, the claims are inextricably intertwined with the state court adjudication and the District Court was correct in finding it lacked jurisdiction over these claims.

Librett also argues that Rooker-Feldman does not bar the claims against Marran, because she and Rachel are seeking an injunction against further abuse and damages for past abuse, not modification of the custody order. Even assuming that it is true that no modification of the custody order would occur because of an injunction or an award of damages, granting an injunction or award of damages against Marran would require this Court to find that the Court of Common Pleas erred in finding that the abuse allegations were unfounded. Rooker-Feldman bars all of Librett's claims against Marran.

Rachel's claims against Marran present a slightly more complicated issue. Generally, Rooker-Feldman does not bar claims by persons who were not parties to the underlying state action. Valenti v. Mitchell, 962 F.2d 288, 297-98 (3d Cir. 1992). As we have noted, "[t]his limiting

6

principle of the <u>Rooker-Feldman</u> doctrine 'has a close affinity to the principles embodied in the legal concepts of claim and issue preclusion.'" <u>Exxon Mobil Corp. v. Saudi Basic Industry Corp.</u>, 364 F.3d 102, 105 (3d Cir. 2004) (quoting <u>Valenti</u>, 962 F.3d at 297). For example, as with claim preclusion and issue preclusion, <u>Rooker-Feldman</u> bars actions brought by parties in privity with the parties in the state action. <u>Id.</u>

Privity "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata." <u>EEOC v. United States Steel Corp.</u>, 921 F.2d 489, 493 (3d Cir. 1990) (quoting <u>Bruszewski v. United States</u>, 181 F.2d 419, 423 (3d Cir.)). "One relationship long held to fall within the concept of privity is that between a nonparty and party who acts as the nonparty's representative." <u>Id.</u> Even if a child is not a party to a custody action her federal claims will be barred if the child is in privity with the named parties (her parents).

Rachel was not a named party in the underlying custody proceeding. The Pennsylvania Supreme Court has never ruled that a child is a party to her own custody hearing, and it is unclear whether a child who is the subject of a custody hearing is in privity to her parents. A recent Superior Court decision has held, however, that three boys could not intervene in their own custody action in order to assert their own interests. <u>Frank v. Frank</u>, 833 A.2d 194, 197 (Pa. Super.

Ct. 2003). In <u>Frank</u>, the Superior Court reasoned that "there is no need for a child to intervene in his or her own custody proceeding" because the child's interests are the subject of the hearing, and allowing such an intervention would be "ineffectual as being redundant." <u>Id.</u> It then held that the boys' claims were barred by collateral estoppel, as they had already been addressed and decided in the custody hearing. <u>Id.</u>

Other states have similarly held that there is no need to make children parties to the custody litigation, either through intervention or other means. <u>See</u>, e.g., <u>Auclair v. Auclair</u>, 730 A.2d 1260, 1270 (Md. App. 1999); <u>Miller v. Miller</u>, 677 A.2d 64, 66-67 (Me. 1996); <u>Hartley v. Hartley</u>, 886 P.2d 665, 673-74 (Colo. 1994); <u>Leigh v. Aiken</u>, 311 So. 2d 444 (Ala. 1975). In some of those cases, the court relied on the availability of a guardian *ad litem* to represent the children's interests. <u>See</u> e.g., <u>Auclair</u>, 730 A.2d at 1270; <u>Miller</u>, 677 A.2d at 66-67; <u>Hartley</u>, 886 P.2d at 673-74. In other cases, no guardian *ad litem* was involved, and only the parents were parties to the action. <u>Leigh</u>, 311 So.2d at 446-48 (court did not err in not appointing guardian *ad litem*, when none was requested and the nature of custody proceedings is already protective of the child's interests).

In all of the cases, the courts recognized that the child's best interests were the guiding force in the custody determination and reasoned those interests were already adequately represented, whether by an appointed guardian *ad litem*

7

or by the parents and court. Courts have generally recognized that a child's interests in a custody dispute are represented by the parents, even when the child makes no motion to intervene. See generally, Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 842 n. 44 (1977) (in litigation, a child's rights are generally represented by a parent or guardian, because the child herself lacks the capacity to represent her own interests); In re Tamara R., 764 A.2d 844, 849 (Md. App. 2000) ("Unless a guardian ad litem is appointed, the children's interests are presumed to be represented by their respective parents.").

In Frank, the Superior Court did not explain whether the boys' claims were estopped because they were deemed parties to the action or because they were in privity to one or both of their parents, who were parties to the action. The precise distinction is unnecessary to our analysis, however, as Rooker-Feldman bars both the parties to the state action and persons in privity with those parties from relitigating in federal court the issues decided in a state court. We therefore hold that Rooker-Feldman bars a minor child from relitigating in federal court the issues concerning the child that were adjudicated in a state custody determination. Rachel's claims against Marran are barred, for the same reasons that Librett's claims against Marran are barred.

The claims against the Montgomery County defendants are even more involved. Librett alleges that the Montgomery County defendants violated her constitutional rights to the companionship, care, custody, and management of Rachel by failing to conduct an adequate investigation into the allegations of sexual abuse. She also alleges that this failure to investigate the allegations adequately caused emotional distress to both Librett and Rachel. She seeks damages under § 1983, as well as a declaration that the investigation was inadequate and a declaration that the findings "are null and void and may not be relied upon for any purpose." (App. at 19).

The District Court reasoned that the Montgomery County defendants were in privity with Marran, and as such, the claims against them were barred by Rooker-Feldman. Although it is not entirely clear how the District Court found a privity relationship between Marran and the Montgomery County defendants, privity is not required. As we recently noted, "we have never deemed Rooker-Feldman inapplicable based on the non-participation in state court of a party asserting the jurisdictional bar." ITT Corporation, 366 F.3d at 216 n.19. Instead, the question must be whether the issues underlying the claims against the Montgomery County defendants were actually litigated in or are inextricably intertwined with the custody determination.

We have held that Rooker-Feldman deprived a district court of jurisdiction over an attorney's challenge to the decision of the Pennsylvania Supreme Court disbarring him. Stern v. Nix, 840

F.2d 208 (3d Cir. 1988). The attorney in Stern framed the claim as a constitutional challenge to certain rules governing attorney discipline, and sought an injunction barring the Pennsylvania Supreme Court from disbarring himself and other similarly situated attorneys if those rules were applied. Id. at 212. We recognized that, at first glance, the challenge appeared to be a general constitutional challenge to the rules and not barred by Rooker-Feldman, but then went on to reason that the nature of the injunction sought indicated that "Stern's complaint is simply a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision of the Supreme Court of Pennsylvania, in contravention of Rooker-Feldman." Id.

In a later case, we held that a similar challenge to the Pennsylvania rules governing attorney discipline was not barred by Rooker-Feldman. Centifanti v. Nix, 865 F.2d 1422 (3d Cir. 1989). Centifanti alleged that certain rules were unconstitutional on their face, and sought an injunction barring the prospective application of those rules. Id. at 1426. The district court, citing Stern, dismissed Centifani's complaint under Rooker-Feldman. Id. We reversed, however, stating that the prospective nature of the injunction meant that it was not barred by Rooker-Feldman. Id. at 1429-30. We also found that the federal claim was not inextricably intertwined with the state claim, because a federal court could find that the rules were unconstitutional without attacking the judgment of the state court that Centifanti had violated those rules. Id. at 1430.

The declaratory judgment that Librett seeks against the Montgomery County defendants is akin to the injunction sought in Stern. She seeks a ruling that the findings are null and void and may not be relied upon for any purpose. This relief is barred under Rooker-Feldman, because it is an indirect attack on the custody determination already adjudicated in state court. The Court of Common Pleas deferred to OCY's findings that the abuse allegations were unfounded, and based its custody determination on those findings. A declaration by this Court that those findings may not be relied on necessarily implies a finding that the Court of Common Pleas was in error. This is the type of indirect appeal of a state court determination is prohibited by Rooker-Feldman.

Despite the fact that Librett and Rachel attempted to seek relief prohibited by Rooker-Feldman, the § 1983 claim itself is not barred by Rooker-Feldman. In Ernst v. Child & Youth Services of Chester County, which also involved child custody matters, a custodial grandmother alleged that Child and Youth Services ("CYS") had improperly formulated and made recommendations to the state court in a dependency proceeding regarding her granddaughter. Ernst v. Child and Youth Services of Chester County, 108 F.3d 486 (3d Cir. 1996). We held that

[t]he Rooker-Feldman doctrine did

9

not preclude the district court from deciding those claims, because a ruling that the defendants violated Ernst's rights to substantive due process by making recommendations to the state court out of malice or personal bias would not have required the court to find that the state court judgments made on the basis of those recommendations were erroneous.

Id. at 491-92. Likewise, in this case, a finding that the Montgomery County defendants violated Librett's or Rachel's substantive due process rights in investigating the allegations of abuse would not require a finding that the Court of Common Pleas erred in relying on the report stemming from the investigation. This is not to say that such a determination would not have an effect on the custody determination. Armed with such a judgment, Librett may be in a position to seek reconsideration of the custody order. Nevertheless, Rooker-Feldman is not implicated, and the District Court erred in dismissing this claim for lack of jurisdiction.[2]

---

[2]The Montgomery County defendants also argue that the § 1983 claims are barred, because Rooker-Feldman bars constitutional claims that could have been but were not raised during the state court proceedings. This is not exactly the case. We have held that

## B.

The District Court went on to find that abstention was proper with respect to the § 1983 claims under the principles enunciated in Younger v. Harris, 401 U.S. 37 (1971). We exercise plenary review over the question of whether the elements required for abstention exist. FOCUS, 75 F.3d at 834. If all of the elements are present, we review the District Court's

---

Rooker-Feldman barred the plaintiffs from raising a First Amendment challenge in federal court, even though it had never actually been litigated at the state court level. Valenti, 962 F.2d at 296. In Valenti, the plaintiffs had challenged an election law on equal protection grounds, but did not raise a First Amendment challenge. Id. We held that the claim was barred, because it could have been raised in the state matter. We later explained, however, that such claims were barred only if they were inextricably intertwined in the state court proceedings. Parkview Assoc., 225 F.3d at 326-29. Thus, a constitutional claim is only barred if finding merit in the claim would require a finding that the state court was wrong. Id. at 326. In this case, a finding that the underlying investigation conducted by OCY was constitutionally insufficient would not indicate that the state court wrongly relied upon OCY's recommendations. It would merely mean that OCY did not properly perform its job. As such, the challenge is not inextricably intertwined with the custody proceedings.

decision to abstain for abuse of discretion.

Younger established that federal courts should abstain from enjoining state criminal prosecutions, because of principles of comity and federalism, unless certain extraordinary circumstances exist. Younger, 401 U.S at 49-54. This holding has been expanded over time to apply to noncriminal judicial proceedings that implicate important state interests. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). "A federal court will only consider Younger abstention when the requested *equitable* relief would constitute federal interference in state judicial or quasi-judicial proceedings." Marks v. Stinson, 19 F.3d 873, 883 (3d Cir. 1994) (emphasis added). The proponent of abstention must show that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989).

The Supreme Court has never explicitly decided whether Younger abstention covers actions for damages as well as equitable relief. See Deakins v. Monaghan, 484 U.S. 193, 202 (1988); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 719 (1996). In Deakins, the Court reserved the question of whether a federal court could decline to exercise jurisdiction over a claim for damages under the principles in Younger, but approved of this Circuit's rule requiring

courts to stay, rather than dismiss, actions for damages that were not cognizable in ongoing state proceedings. Deakins, 484 U.S. at 202. In Quackenbush, the Supreme Court held that, in cases removed from state court, remand under abstention principles was proper only when discretionary relief, such as an injunction or declaratory judgment, was sought. Quackenbush, 517 U.S. at 730. These cases seem to indicate that abstention under Younger principles is not proper when damages are sought.

Even if Younger abstention is proper in suits for damages, it was not appropriate for the District Court to abstain from the § 1983 claims in this case. While it is true that litigation regarding custody is still ongoing in the state court, there are no ongoing state proceedings regarding the adequacy of OCY's investigation. When there are no pending state proceedings, Younger abstention is inappropriate. FOCUS, 75 F.3d at 843.[3]

_____

[3]Librett argues that Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992), precludes a federal court from ever declining jurisdiction under Younger principles when the case involves domestic relations, unless the plaintiff directly asks for a divorce, custody, or alimony decree. This is simply not true. In Ankenbrandt, a mother sued a father on behalf of their children, seeking damages for abuse. Id. at 691. The district court found that it lacked jurisdiction over the action because of the "domestic relations" exception to

## C.

Although the District Court erred in dismissing the § 1983 claims under both Rooker-Feldman and Younger abstention, dismissal was still proper under Rule 12(b)(6). A motion to dismiss for failure to state a claim may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the plaintiff is still not entitled to relief. Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 168 (3d Cir. 2003). To make out a prima facie case under § 1983, the plaintiff must demonstrate that a person, acting under color of law, deprived him of a federal right. Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000). "Section 1983 is not a source of substantive rights and does not provide redress for common law torts–the plaintiff must allege a violation of a federal right." Id.

"Local governing bodies . . . may be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Soc. Serv., 436 U.S. 658, 690 (1978). In addition, local governments can be sued for "constitutional deprivations visited pursuant to governmental 'custom.'" Id. at 690-91. Local governments are not liable "unless action pursuant to official policy of some nature caused a constitutional tort." Id. at 691. In other words, a county (or its agencies) may not be sued under a *respondeat superior* theory. Therefore, a *prima facie* case against a county must involve an allegation of a policy or custom that directed or caused the constitutional deprivation.

Librett alleges that OCY's failure

---

diversity jurisdiction. Id. In the alternative, the district court found that it would abstain from exercising jurisdiction under the principles of Younger. Id. The Supreme Court confirmed that a "domestic relations" exception to diversity jurisdiction did exist, but that it was only applicable in a narrow set of circumstances not present in that case. Id. at 703. The Court then examined the alternative holding under Younger and found that abstention was inappropriate in that case, because the father's rights had already been severed and there were no ongoing proceedings in state court. Id. at 705. Ankenbrandt does not stand for the proposition that Younger abstention is never appropriate in cases involving domestic relations. It held that Younger abstention is inappropriate in domestic relations cases when there are no ongoing proceedings. Id. at 705. In this case, the District Court relied on Rooker-Feldman in finding that it lacked jurisdiction over Librett's and Rachel's claims. The "domestic relations" exception to diversity jurisdiction was not relied on.

"to consult even one of the mental health professionals to whom Rachel Marran described the sexual abuse she had experienced at the hands of her father . . . denied Ms. Librett her constitutionally protected rights in the companionship, care, custody, and management of her daughter Rachel" and caused severe emotional distress to both Rachel and Librett. (App. at 46.) Assuming, *arguendo*, that Librett properly alleged a constitutional violation, Librett did not allege that a policy or custom of OCY or Montgomery County led to the violation. This is an essential part of a § 1983 claim against a county. Without an allegation of a policy or custom, Librett has not stated a *prima facie* case, and the District Court properly dismissed the claim without permitting discovery.

IV.

The claims against Marran and the attempt to seek declaratory judgment that OCY's findings are null and void and may not be relied upon for any purpose are an attempt by Librett and Rachel to relitigate an issue already decided by the Montgomery County Court of Common Pleas. The District Court properly dismissed them under Rooker-Feldman. In addition, the remaining claims against the Montgomery County defendants were properly dismissed for failure to state a claim, and Librett has conceded that she is unable to properly state a claim.[4]

The District Court's order of June 12, 2003, dismissing the complaint will be affirmed.

---

[4]Librett asserts that, in the § 1983 claim, she would claim that Montgomery County lacked a policy requiring reasonable investigations, or that it had such a policy, but that the policy was breached in this case. Even if she were allowed to amend her complaint to include such allegations, she would still fail to properly state a claim against the Montgomery County defendants under § 1983.

13