

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-2005

# Maydak v. US Dept Ed

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4436

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Maydak v. US Dept Ed" (2005). *2005 Decisions*. Paper 514.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/514

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

NO. 04-4436

———————————

KEITH MAYDAK,

Appellant,

v.

UNITED STATES DEPARTMENT OF EDUCATION;
BUREAU OF CITIZENSHIP & IMMIGRATION;
UNITED STATES POSTAL SERVICE;
TRANSPORTATION SECURITY ADMINISTRATION;
UNITED STATES DEPARTMENT OF TRANSPORTATION;
UNITED STATES DEPARTMENT OF JUSTICE

———————————————————————

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 03-cv-01091)
District Judge: Honorable Alan N. Bloch

———————————————

Submitted Under Third Circuit LAR 34.1(a)
August 12, 2005

Before:  ALITO, SMITH and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: September 21, 2005)

———————————

OPINION

———————————

PER CURIAM

Appellant Keith Maydak was arrested in August 2001 by Pittsburgh police for driving under the influence and other motor vehicle violations. He was on supervised release at the time as a result of his conviction in a prior criminal action. In September 2001, the United States Probation Office filed a Petition on Supervised Release, contending that Maydak had violated the standard conditions of supervised release. Maydak was ordered to appear for a hearing on September 27, 2001, and when he failed to appear, the District Court ordered his arrest. On September 29, 2002, Maydak was arrested in Canada by Canadian authorities. In October 2002, the Probation Office filed a supplemental petition, contending that Maydak had violated various additional conditions of his supervised release. On or about October 29, 2004, Maydak was surrendered by Canada after contesting extradition.

While Maydak was in Canada, he filed suit against six United States agencies under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in United States District Court for the Western District of Pennsylvania, the same court from which he had fled. The complaint describes Maydak's unsuccessful attempts to obtain a vast and disparate assortment of records, including records from the Department of Education concerning its lawsuit against him for defaulting on a student loan more than 10 years ago, the Department of Homeland Security concerning the legality of Malgorzata Duszak's status in this country, and the Department of Justice concerning its "no fly lists," among many

2

others.  The government moved to dismiss the complaint under the fugitive disentitlement

doctrine, or, alternatively, for failure to exhaust administrative remedies.

In an order entered on September 29, 2004, the District Court dismissed the action

under the fugitive disentitlement doctrine pursuant to its inherent authority.  The court

reasoned that Maydak's flight to Canada was in complete disregard of its authority to

adjudicate the supervised release violations, and it viewed the FOIA lawsuit as an

indignity under the circumstances, noting Maydak's "contemptuous disrespect."  See

Ortega-Rodriguez v. United States, 507 U.S. 234 (1993); Molinaro v. New Jersey, 396

U.S. 365 (1970).  The court reviewed the information sought and found a connection

between Maydak's FOIA case and his status as a fugitive, Ortega-Rodriguez, 507 U.S. at

246, the connection being a further desire to evade law enforcement by investigating if

and how he could depart from the United States again via air travel if released by

Canadian authorities.  Maydak appeals.

We will affirm.  Although courts have authority to dismiss the direct appeal of a

criminal fugitive who remains at large after escaping custody,[1] the fugitive disentitlement

doctrine does not automatically disqualify a criminal fugitive from maintaining a civil

action in federal court.  In Degen v. United States, 517 U.S. 820 (1996), the Supreme

Court held that a district court could not apply the fugitive disentitlement doctrine to

---

[1]  In Ortega-Rodriguez, 507 U.S. 234, the Supreme Court rejected use of the doctrine
against a defendant to dismiss an appeal when the defendant who had escaped during the
district court proceedings was in custody during the appeal.

3

sanction a fugitive who had fled from the court's jurisdiction in a criminal case by refusing to accept his answer in a related civil forfeiture action. The Court emphasized that the fugitive defendant had a constitutional right to defend his property and that to strike his filings would be an excessive response to the concerns raised. Id. at 828. Several courts have observed that, with respect to the fugitive disentitlement doctrine, Degen shifted the emphasis in civil cases from considerations of dignity and deterrence to practical considerations such as enforceability and prejudice. See, e.g. Sarland v. Anderson, 205 F.3d 973, 974-75 (7th Cir. 2000).

Nevertheless, Degen does not operate as an absolute bar to applying the fugitive disentitlement doctrine in a civil case on the ground that the criminal fugitive's flight operates as an affront to the dignity of the court. See Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004). In Marran, we held that a mother's purported status as a fugitive did not warrant dismissal of her federal appeal in a civil rights case under the doctrine. The mother had been held in contempt by a state court, and state criminal charges had been filed against her in connection with her refusal to produce her daughter under a custody order. Id. at 148-49. In rejecting a motion to dismiss the appeal on the basis of the doctrine, we did not reject the dignitary rationale out of hand; we simply noted that "the affront was to the dignity of the Pennsylvania courts, not to this Court." Id. at 149. See also United States v. Awadalla, 357 F.3d 243, 246 (2d Cir. 2004) (Degen's rationale for discounting dignity as relevant factor in civil case is that criminal defendant should not be

4

sanctioned by one court for his affront to another court).

The District Court's decision to apply the doctrine to Maydak's FOIA action was not an abuse of discretion. See Bagwell v. Dretke, 376 F.3d 408, 413 (5th Cir. 2004) (discussing proper standard of review). Maydak was not returned to the District Court's custody until a month after his FOIA case was dismissed, and prior to his return, he contested extradition. Thus, he was indeed a fugitive. Furthermore, dismissal did not interfere with Maydak fully exercising his rights under the U.S.-Canada Extradition Treaty. The federal contempt case initiated against him when he fled the jurisdiction was dismissed as a result of the terms of the extradition treaty. In addition, there was enough of a connection between Maydak's fugitive status and his FOIA case to justify application of the doctrine, Ortega-Rodriguez, 507 U.S. at 246, as explained by the District Court.

Finally, the sanction was not excessively harsh or extreme. Degen, 517 U.S. at 829; Bagwell, 376 F.3d at 414. It is the purpose of the Freedom of Information Act to promote accountability by opening the actions of government officials to public scrutiny. See McDonnell v. United States, 4 F.3d 1227, 1251 (3d Cir. 1993). Courts are available to enforce the rights established by the statute. However, the District Court's application of the doctrine to bar suit in the Western District was not excessively harsh insofar as Maydak could have filed his FOIA action in United States District Court for the District of Columbia, where he has filed other FOIA actions. 5 U.S.C. § 552(a)(4)(B) (West Supp. 2004). He did not need to file his action in the court from which he fled. The

5

dismissal with prejudice means that Maydak may not seek to reinstate this action in the Western District even though he no longer is a fugitive, but the District Court for the District of Columbia, not having been flouted, might well determine that dismissal in the Western District of Pennsylvania, under the District Court's inherent authority to control the proceedings before it, does not operate as a bar to suit in the District of Columbia (an issue we leave to that able court).

We will affirm the order of the District Court dismissing the case with prejudice.