OPINION
McKEE, Circuit Judge.
Sherry Studli appeals the district court’s grant of summary judgment in favor of defendants in this civil rights action under 42 U.S.C. § 1988. For the reasons that follow, we will affirm.
I.
Since we are writing primarily for the parties who are familiar with the factual and procedural background of this dispute, we will only set forth as much of the background as is helpful to our discussion.
Briefly stated, Studli is the mother of six children, some of whom have reached the age of majority. Two of Studli’s daughters, RS and AS,[1] were voluntarily placed in Somerset County Children and Youth Services (“CYS”) custody on August 6, 2001. Studli filed a pro se complaint on September 9, 2005, in which she alleged that several of her constitutional rights were violated by CYS’s removal of her children from her custody on and off for seven years.
II. § 1983 CLAIM
Studli argues that the district court erred in entering summary judgment for the defendants on her § 1983 Claim. However, a county agency cannot be sued under a respondeat superior theory of liability. Marran v. Marran, 376 F.3d 143, 156 (3d Cir.2004). A governmental body is subject to liability only if the alleged unconstitutional act either (1) “implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body’s officers” or (2) is “visited pursuant to governmental custom even though such a custom has not received formal approval through the body’s official decisionmaking channels.” Monell v. Department of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (internal quotations and citations omitted).
Here, the district court recognized that Studli had identified two customs, practices or policies. She claims that CYS was “organized to operate a business that apparently profits to misuse of children for budget purposes” and that CYS contracts some foster home placements that are outside of Somerset County. The district court concluded, however, that while Studli identified these two policies or practices of Somerset County, she failed to provide “any evidence that [they] ... exist, much less that [they] were the moving force behind alleged constitutional violations.”
CYS first relies on Fed. R.App. P. 28(9)(A), and argues that Studli’s brief “must contain ... appellant’s contentions ... with citations to the ... parts of the record on which the appellant relies.” Appellees’ Br. at 11. CYS contends that because Studli failed to support her legal conclusions with factual assertions citing to the record, her appeal should be dismissed. CYS argues in the alternative that it is not subject to liability because it is an agency of a municipality. Although we agree that Studli must do more than make assertions in a brief to prevail on her § 1983 claim, we disagree with CYS’s assertion that its status as a municipal agency immunizes it from Studli’s claim. There is no blanket immunity for a munici *809 pality. A governmental agency can be liable under § 1983 where its officers either (1) officially adopt an unconstitutional policy, custom or practice or (2) a governmental custom creates a constitutional deprivation. Monell, 436 U.S. at 694, 98 S.Ct. 2018. Moreover, individual governmental actors can also be liable unless their conduct falls within the protective scope of qualified immunity, and Rugg and Hazlitt both argue that they are entitled to qualified immunity.
A. QUALIFIED IMMUNITY
In Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court mandated a two-step process for analyzing claims of qualified immunity. Under Saucier, we must determine whether the facts alleged would establish a violation of a constitutional right. Id. If so, we must then determine if the asserted right was “clearly established” at the time of defendant’s conduct. Id.
Although this approach has not been completely abandoned, the Supreme Court recently held that “the Saucier procedure should not be regarded as an inflexible requirement.” Pearson v. Callahan, — U.S.-, 129 S.Ct. 808, 813, 172 L.Ed.2d 565 (2009).
In order for a right to be clearly established, “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Saucier, 533 U.S. at 202, 121 S.Ct. 2151 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Even when specific conduct has not previously been ruled unlawful, “officials can still be on notice that their conduct violates established law.” Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal quotation marks and citations omitted).
To determine if Rugg or Hazlitt are entitled to qualified immunity, we must determine if Studli has adequately alleged a violation of a constitutional or statutory right, and if so, whether that right was clearly established at the time of their alleged conduct.
Although Studli’s brief is far from clear, she appears to raise the following constitutional violations: (1) Fourth Amendment unreasonable seizure, (2) substantive due process, and (3) procedural due process. In her Reply Brief, Studli attempts to raise additional violations, including violations of the federal Adoption Assistance Act and Abuse Prevention Act. However, these issues were not preserved for appeal, because she did not present them in the district court. Accordingly, we need not address them now.
B. FOURTH AMENDMENT UNREASONABLE SEIZURE CLAIM
Studli’s Fourth Amendment claim appears to rest on her allegation that CYS officials unreasonably relied on her mental health problems in deciding to remove (i.e. “seize”) her children. The Permanency Review Hearing Report concluded that placement was necessary in part because Studli admitted a prior diagnosis of Bipolar disorder requiring medication and she had not maintained contact with mental health providers. There was also evidence that Studli threatened suicide on two or more occasions.
In Callahan v. Lancaster-Lebanon Intermediate Unit 13, 880 F.Supp. 319, 334 (E.D.Pa.1994), the court analogized the situation of a child care worker who seeks, obtains and executes a temporary custody order to a “police officer seeking, obtaining and executing an arrest warrant.” The court opined, “[it] is well-settled that probable cause to arrest generally exists when *810 a police officer makes an arrest pursuant to a warrant that meets the requirements of the Fourth Amendment.” Id. (citations omitted). The only exception is where “the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.” Id. It is only when this exception applies that the “shield of immunity” would be lifted. Id. (quoting Malley v. Briggs, 475 U.S. 335, 344, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).
Much like in Callahan where the defendants obtained a temporary custody order from state court, the purported “seizures” here occurred only after the Court of Common Pleas gave verbal and written orders authorizing CYS to take Studli’s children in order to protect them. That “seizure” was affirmed by the Superior Court of Pennsylvania during Studli’s appeal. If we analogize the taking of the children to an arrest for Fourth Amendment purposes as Studli’s complaint suggests, it is clear that the case workers can not be liable for conduct that was ordered by a trial court and approvingly reviewed by an appellate court absent anything like fraud, unreasonableness or bad faith; and nothing of that sort appears on this record.
In arguing to the contrary, Studli directs us to a myriad of recent cases from other jurisdictions. Fisher v. Harden involved the detention of an individual based on an unconfirmed report that he was suicidal. 398 F.3d 837, 843 (6th Cir.2005). The court held that officers must have probable cause to detain an individual based on the belief that he is a danger to himself or others, id., but Studli does not claim that she was detained. Her children were removed based only in part on her mental health issues, but also based on unsanitary conditions at the home including lice and cockroaches.
Studli argues that CYS employees do not have adequate training about mental health issues, in violation of the “national Child Welfare league standards.” Appellant’s Br. at 16. However, she does not cite any specific League standards that were breached. Rather, she relies on AM. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, where the court found a liberty interest in the plaintiffs “personal security and wellbeing” as protected by the Fourteenth Amendment. 372 F.3d 572, 579 (3d Cir.2004). The court found that a “municipality may be liable for failing to train its employees if that failure amounts to deliberate indifference.” Id. at 582. That analysis pertained to an alleged denial of substantive due process; it does not apply to Studli’s Fourth Amendment rights. Id. at 582 (quoting City of Canton v. Harris, 489 U.S. 378, 389-90, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Moreover, even if we liberally construe her allegations and stretch them to include a substantive due process claim, she would still not be able to prevail because the only evidence of “deliberate indifference” here pertains to Studli, not CYS.
Since Studli cannot show that CYS or its employees unreasonably relied in bad faith on the verbal and written Orders of the Court of Common Pleas, the removal of her children was not unreasonable under the Fourth Amendment even if we assume arguendo that it constituted a Fourth Amendment seizure.
C. SUBSTANTIVE DUE PROCESS CLAIMS
Studli’s substantive due process claim is rooted in the constitutionally protected liberty interests in familial integrity. Appellant’s App. at 7. We have recognized “constitutionally protected liberty interests that parents have in the custody, care and management of their children.” See Croft v. Westmoreland County CYS, *811 103 F.3d 1123, 1125 (3d Cir.1997) (citing Lehr v. Robertson, 463 U.S. 248, 258, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir.1987)). However, this liberty interest is “not absolute.” Id. Courts “must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse.” Id. at 1125.
A social worker’s negligence will not, on its own, violate a parent or child’s substantive due process right. Miller v. City of Philadelphia, 174 F.3d 368, 376 (3d Cir.1999) (citing County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (“[Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.”)). Rather, a substantive due process violation by a social worker must be “so clearly arbitrary” that it “can properly be said to shock the conscience.” Id. A social worker need not have acted with “the purpose to cause harm,” but must “exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness.” Id. at 375-376.
As the facts diverge as to the claims against Hazlitt and Rugg, we need to address each separately.
1. Hazlitt
Studli supports her substantive due process claim against Hazlitt by pointing to her Amended Complaint where she alleged that Hazlitt prepared, verified and signed a “patently fraudulent” Primary Review Hearing Report. Appellant’s Br. at 8. She claims that the Report falsely accused her of recently threatening suicide on multiple occasions and having a “previous diagnosis of Bi-polar disorder requiring medication management.” S.App. 287b. Studli argues that these allegations could have been developed at trial.
Studli attempts to compare Hazlitt’s alleged fraudulent behavior to the due process violation of a “threat” in King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir.1997). There, the court held that a threat constitutes a constitutional violation where it exerts “coercive pressure on the plaintiff’ and deprives the plaintiff of a constitutional right. Id. Even viewing the record in the light most favorable to Studli, there is no evidence that Hazlitt made such a threat and even if there was a “threat” to remove the children, given the danger the risk involved, it is a stretch to find that any such threat would have “shocked the conscience.”
In Croft, a social worker threatened to remove a child from the home if the parent did not leave the household, but that was done without any concrete evidence that the child was in danger. 103 F.3d at 1123. Hazlitt made no such threat. Hazlitt simply completed a relevant question on the Report by cutting and pasting information from a caseworker who worked with Studli. This information was not intentionally fabricated, nor “sixth degree hearsay” as in Croft. Rather, it was based on concrete medical information in Studli’s file. Therefore, Studli’s substantive due process claim against Hazlitt was properly dismissed.
2. Rugg
It is unclear what Studli’s claim against Rugg is based on. The district court assumed that the only related liberty interest that could be involved is the interest in the “care, custody, and management of children” discussed above, and we agree. See Croft, 103 F.3d at 1125. The same “shock the conscience” standard for establishing a due process violation by a social worker applies. See Miller, 174 F.3d at 375.
*812 Studli appears to base this claim on the allegation that Rugg failed to secure medical treatment for A.S. following a car accident, although Studli’s brief does not clearly address this issue. As the district court acknowledged, the record is clear that at the time of the accident, A.S. was residing at the Bradley Center in Pittsburgh, and it is not clear when Rugg first knew of the accident. While Studli claimed in her deposition that she called Rugg and left messages for her, Rugg claims she was notified of the accident on July 10, 2002, six days after the car accident. Viewing the facts in the most favorable light to Studli, even if Rugg received Studli’s messages before July 10th, Studli admits that A.S. was taken to the hospital with “severe bruising” and given pain medication. Priscilla Palmer, an employee of the Bradley Center, explained that A.S. was seen by a nurse immediately after the accident and discharged. S.App. 559b-562b. A “day or two later,” A.S. returned complaining that her arm hurt. Id. A.S. was then examined by Dr. Ravi Kant.
Assuming all facts in favor of Studli, the substantive due process claim against Rugg fails to “shock the conscience,” because A.S. received medical treatment and the record does not support a finding that Rugg did anything to delay, obfuscate or obstruct that treatment. Moreover, Rugg clearly followed up on Studli’s concerns about A. S.’ injuries and ensured that treatment was provided. Therefore, this claim was properly dismissed.
3. Substantive Due Process Claim against CYS
Studli also bases her substantive due process claim against CYS on the liberty interest in the “custody, care and management of children” discussed above. See Croft, 103 F.3d at 1125. Studli’s brief does not discuss this claim against CYS in any detail. The only relevant allegation is that CYS was operating a for-profit business and it placed its children outside Somerset County borders. (Amended Complaint, ¶ 20,21).
CYS is a not-for profit entity that receives funding for placement of children through federal, state and county governments. It is uncontested that CYS places a majority of the children in its custody within Somerset County. CYS places children outside of Somerset County only if placement within the county is unavailable. Studli’s allegations do not rise to the level of a substantive due process violation unless CYS’ policy of allowing placement of a child outside Somerset County in some circumstances is a custom, practice or policy that “shocks the conscience.”
Studli’s argument that the record is sufficient to allow a reasonable fact finder to conclude that such a policy does shock the conscience is as untenable as it is frivolous. If accepted, it would cause the very kind of hesitation and restraint on prompt action in these cases that the policy was intended to allow.
It is clear on this record that the individual defendants and CYS were faced with an extraordinarily unfortunate situation and that the safety and welfare of Studli’s minor children appeared jeopardized by allowing them to continue to remain with their mother. As we noted earlier, Studli’s liberty interest is not absolute, and must be balanced by the practical ability of the state to protect children from abuse. See Croft, 103 F.3d at 1125. Therefore, Studli’s substantive due process claim against CYS was properly dismissed.
III. PROCEDURAL DUE PROCESS CLAIM
While Studli appears to be arguing that her procedural due process claim was erroneously dismissed, her appellate brief does not state that argument in the section where summary of all arguments is re *813 quired. However, it would not merit discussion even if properly asserted.
A prima facie procedural due process claim must establish that “(1) there has been a deprivation of liberty or property in the constitutional sense; and (2) the procedures used by the state to effect this deprivation were constitutionally inadequate.” Callahan v. Lancaster-Lebanon Intermediate Unit 13, 880 F.Supp. 319, 332 (E.D.Pa.1994). Under Pennsylvania law, “an individual taking a child into protective custody shall ... within 24 hours in writing notify the parent, guardian or other custodian of the whereabouts of the child ... and the reasons the child was taken into protective custody.” 23 Pa.C.S.A. § 6315(c). After written notice is provided, an informal hearing must be scheduled within 72 hours. 23 Pa.C.S.A. § 6315(d). Following the informal hearing, if a determination is made that the child is dependent, a formal hearing must be held within ten days. 42 Pa.C.S.A. § 6335(a).
Studli does not assert that CYS violated the applicable Pennsylvania statutes or that those statutes are not adequate to protect her Fourteenth Amendment procedural interests. Accordingly, Studli’s procedural due process claim was properly dismissed, because CYS followed Pennsylvania statutory procedure, and Studli does not argue such procedures failed to protect her procedural due process rights.
IV. COLLATERAL ESTOPPEL CLAIM
CYS argues that the doctrine of collateral estoppel bars relitigation of this claim because the Pennsylvania Superior Court already issued an opinion on this matter, and that the claim is barred by the Rooker-Feldman doctrine which precludes a federal court, other than the Supreme Court, from reversing a state court. Appellee’s Br. at 27-29. Collateral estoppel prevents relitigation of the same issues in a later case involving the same party or one in privity. Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30, 290 F.3d 567, 572 (3d Cir.2002). Neither factual nor legal issues can be relitigated if four factors are present: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir.1995).
CYS points to the Pennsylvania Superior Court opinion in In re: M.S., P.S., K.S. and J.F., No. 1526 WDA 2004, 881 A.2d 896 (Pa.Super. June 20, 2005). CYS claims the Superior Court opinion collaterally estops Studli from relitigating (1) that there was no jurisdiction to find the children dependent or (2) that CYS improperly declared the children dependent without clear and convincing evidence. Appellee App. at 28. The Opinion held that the trial court did not abuse its discretion “in finding clear and convincing evidence that MS., P.S. and K.S. were without proper parental care and control, rendering them dependent.” S.App. at 629b.
The issues before us involve whether CYS violated Studli’s constitutional rights; her claim is at least arguably distinguishable from the issues in state court that were driven by considerations of what was in the best interest of her children. We therefore reject CYS’s claim of collateral estoppel, but we will nevertheless affirm the district court’s grant of summary judgment.
V. PRESERVATION OF ISSUES FOR APPEAL
CYS argues that Studli waived issues related to (1) her mental illness; (2) *814 violations of national or state standards for the removal of her children; (3) the training of CYS personal; (4) A.S.’ medical treatment; and (5) R.S.’ alleged pregnancy, because she did not preserve them prior to filing this appeal. See In re Surrick, 338 F.3d 224, 237 (3d Cir.2003) (issue raised for first time in reply brief was waived); Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir.1993) (“[Ujnder Third Circuit Local Appellate Rule 28.1(a), appellants are- required to set forth the issues raised on appeal and to present an argument in support of those issues in their opening brief.”). We see no reason to ignore our general rule against considering issues “that are raised for the first time on appeal.” Newark Morning Ledger Co. v. U.S., 539 F.2d 929, 932 (3d Cir.1976).
Rather than showing us where she raised these issues in the district court, Studli argues that the issues were not waived because they are “fundamental and obvious plain error.” Reply Br. at 1. However, that doctrine is inapplicable here. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 256, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Given all the circumstances here, and the importance of the interests involved for Studli as well as her minor children, we will not address an argument that was not developed in the district court.
CONCLUSION
For all the reasons set forth above, the order of the district court dismissing Studies complaint and granting summary judgment to the defendants will be affirmed.

. Studli's children’s initials are being used to protect their privacy, consistent with the briefs submitted by the parties.